612 So.2d 359 (1992)
CENTURY 21 DEEP SOUTH PROPERTIES, LTD., Donald J. Steighner and Gregory A. Meiers and Wife, Wanda M. Meiers
v.
James H. CORSON and Wife, Lucy H. Corson.
No. 89-CA-1099.
Supreme Court of Mississippi.
December 17, 1992.
Rehearing Denied February 18, 1993.
*361 Katherine S. Kerby, Gholson Hicks & Nichols, Ronald L. Roberts, Mitchell McNutt Threadgill Smith & Sams, Columbus, William R. Barnett, Jackson, for appellants.
Paul M. Neville, Jackson, for appellees.
*362 Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
This appeal arises from a suit initially brought by the Corsons in the Lowndes County Chancery Court against the Meiers, Bob Keys and Thomas Vice, (owners of Keys & Vice Realty, now Century 21 Deep South Properties), and Donald Steighner, alleging breach of assumption warranty deed (Meiers), negligence (Keys & Vice), and legal malpractice (Steighner). The Meiers' answer included a cross-claim against Steighner for negligence. Frank Whitaker was subsequently added as a defendant as was Century 21 Deep South Properties.
The chancellor awarded the Corsons $75,000.00 damages against the Meiers (for breach of warranty), Steighner (for negligence), Century 21 (negligence), and Whitaker (negligence), jointly and severally, and $35,000.00 punitive damages against Steighner for gross negligence. Steighner was also ordered to pay the Corsons $10,000.00 attorney fees. The Meiers were awarded $5,000.00 against Steighner for his negligence. Whitaker was dismissed following execution of a covenant not to sue.
Century 21, the Meiers, and Steighner appeal to this Court and the Corsons cross-appeal, assigning the following errors:

CENTURY 21
I. Reversible error exists due to the refusal of the trial court to grant Appellant Century 21 Deep South Properties' motions for specific findings of fact and conclusions of law;
II. The trial court committed reversible error by its apparent finding of agency and/or sub-agency between the Corsons and Appellant Century 21 Deep South Properties, Ltd. and Frank Whitaker and Century 21;
III. The trial court committed reversible error by holding Appellant Century 21 Deep South Properties liable to the Corsons when there was no evidence of any breach of any legal duty by Appellant Century 21 Deep South Properties to the Corsons;
IV. The trial court committed reversible error through the failure to grant the motion for summary judgment or in the alternative for dismissal of Century 21 Deep South Properties Ltd.;
V. The trial court committed reversible error due to the failure to dismiss Century 21 Deep South Properties at the end of Plaintiffs' case in chief;
VI. The trial court committed reversible error by refusing to grant the motion to dismiss of Century 21 Deep South Properties due to the Corsons' failure to have persons in court necessary for a just adjudication pursuant to Rule 19 of the Mississippi Rules of Civil Procedure;
VII. The trial court committed error through the admission of the testimony of James T. Marsh;
VIII. The trial court committed error through the admission of the testimony of Robbie Earhart as to the Corsons' damages;
IX. The trial court committed reversible error by the award of damages against Century 21 Deep South Properties;
X. The trial court committed reversible error in the apparent holding that Century 21 Deep South Properties, Ltd., was liable for actions or inactions of Frank Whitaker;
XI. The damages awarded by the trial court for liens on the Corsons' property are in error as the Corsons never listed their property for sale while the liens existed;
XII. The trial court committed reversible error by not applying to Corsons the doctrines of assumption of risk and/or contributory negligence;
XIII. The trial court committed reversible error by requiring a realtor/broker to abide by the standards of an attorney; and
XIV. Reversible error exists by entry of the judgment against Appellant Century 21 Deep South Properties as the court's opinion under conclusions of law omits all reference as to any violation of any legal duty by Century 21 to the Corsons.

*363 GREGORY AND WANDA MEIERS
I. The Appellees were not entitled to damages, other than nominal damages, against Gregory A. Meiers and Wanda M. Meiers for their breach of the warranty contained in the assumption warranty deed; and
II. If the Appellees are entitled to a judgment against Gregory A. Meiers and wife, Wanda M. Meiers, then the Meiers should recover the amount of the judgment from Donald J. Steighner in addition to the amount awarded by the lower court.

DONALD J. STEIGHNER
I. Mississippi requires an attorney-client relationship in an action based on attorney or legal malpractice; and
II. Even under expanded theories of liability, the Corsons cannot recover here because neither they, nor their attorney, relied on work performed by Steighner.

CORSONS' CROSS-APPEAL
I. Was the trial court manifestly in error in cutting the Corsons' damages in half when the proof of loss of wages was undisputed?
II. Was the trial court in error in ruling that the offering of an attorney for proof on attorney's fees operated as a waiver of attorney-client privilege generally?
We will address only those assignments of error which merit discussion.

FACTS
James Corson, Appellee, is a human resource consultant who moved to Mississippi in January or February, 1980. In an effort to locate a home in Columbus, where he was employed with Mitchell, he contacted Frank Whitaker, a realtor in Columbus. There was no written agreement with Whitaker regarding the services he was to provide. The house hunt ended when Whitaker showed Corson the house belonging to Greg and Wanda Meiers. A contract for the sale and purchase of real estate, provided by Frank Whitaker Realty, was entered into by the Corsons and the Meiers on March 22, 1980, in connection with the purchase of the Meiers' house.
Whitaker explained to Corson that he was responsible for having title work done and Corson testified he named the law firm of Threadgill, Smith, Sanders and Jolly because Taylor Smith was the only lawyer in town that he knew. Corson said within a week Whitaker informed him that Century 21, the listing agent for the Meiers' property, had already contacted a law firm to do the title work and asked if Corson wanted to pay for the Threadgill firm to do the title work too. Corson, not wanting to pay for two title opinions, said he would leave it to Century 21. Although he testified that nothing specific was mentioned at the time regarding the title work Century 21 was providing, Corson stated that past experience in purchasing houses had taught him that title searches go back "essentially, forever." When Whitaker reported that the attorney doing the title work had discovered an easement problem (there was no access to the property without one), Corson assumed the attorney was doing a good job. Corson cancelled the closing because he did not want to buy property burdened with legal problems. Once the easement problem had been resolved the closing was rescheduled and held on April 3, 1980.
The Corsons moved into the house a few days after closing and had no reason to question their title until the fall of 1981, when James Corson attempted to take out a second mortgage on his home in order to buy a computer to use in his consulting work. First Columbus National Bank, the Corsons' lender, required a title search, which Corson thought would be less costly if performed by Dunn & Webb, the firm who had done the previous title work for Century 21. However, upon learning what their fee would be, Corson employed David Smith, another attorney in Columbus. As a result of Smith's title work, Corson learned that his property was encumbered by four liens which had been in existence at the time he purchased the property. He also learned that Donald Steighner, an attorney in Columbus, had closed the loan for the Meiers when they bought the property. Steighner's title opinion had revealed the *364 existence of only two liens and those had not been satisfied or cancelled. The second mortgage was nonetheless obtained although the bank required the Corsons to use their cars as additional collateral. The Corsons borrowed a total of $32,800.00 between December, 1981 and April, 1985. ($17,800.00 of that amount was borrowed after Corson learned of the liens; the remainder was the second mortgage amount.)
Beginning in January, 1982, and continuing until April of that year, Corson had a series of conversations with Steighner regarding the liens. Corson testified that Steighner asked him to collect information about the liens so they could be taken care of, which Corson did, and Steighner reported the situation to his insurance company.
In June, 1982, Corson learned that he would be laid off from his job at Mitchell as of July 1, 1982. With personnel jobs in Columbus rare, Corson was concerned that he would not be able to pursue work in another geographic area because it would be difficult to sell his house as long as the liens existed. At this point Corson contacted Welborne Johnson, the Columbus attorney who was representing Steighner's errors and omissions carrier. A letter reflecting Corson's concern was sent from David Smith to Johnson.
Corson testified that he missed a job opportunity with General Tire in Mt. Vernon, Illinois, because of the situation with his house, but he further stated that he was not actually offered the job after he told General Tire that he would not be able to report to work immediately because of legal problems with his house. Although he made efforts to find other employment, October of 1982 found Corson subsisting on a combination of income from consulting work he did from his home and unemployment benefits. Corson opined that his failure to get the job at General Tire caused him to lose wages of at least $150,000.00. He admitted on cross-examination that shortly after he was terminated at Mitchell he had an offer to work as an associated consultant in Peoria for a percentage of the business generated. Not believing the opportunity to be a good one, he declined.
Despite the existing liens, Corson contacted Carolyn Brown of Century 21 in the fall of 1982 to inquire about selling his house. She prepared a market analysis as a result of which Corson decided it was not feasible to sell his home because "by the time you added up the first mortgage and the second mortgage and the value of the liens, there wasn't enough money to cover everything that I owed... ." Brown had used a sale price of $74,000.00 in this analysis. Corson also testified that he had found a buyer for his house, Charles Garrick, but the liens foiled the sale.
In June, 1986, Corson did sell his home with the help of Robbie Earhart of West Realty, with whom he had listed the house in 1985. At this time the liens on the property were no longer in existence. (David Smith executed a final title certificate to Mississippi Valley Title showing no outstanding liens in January, 1983.) Corson opined that the house lost between $6,000.00 and $8,000.00 in value between 1982 and the time it was finally sold in 1986.
When Corson first instituted this litigation he was represented by a law firm which was to bill Mr. Taylor of Mississippi Valley Title. Mississippi Valley would pay the bills and Corson was to reimburse them for half of the fees. Corson paid $2,800.00 in fees then could no longer afford the services of the law firm, which would not handle the case on a contingency basis. Corson subsequently retained Paul Neville and Gene Stringer, now deceased, who agreed to handle the case for a contingent fee.
Corson testified that he suffered mental anguish as a result of the situation with his house which was exacerbated by Steighner's constant lying and Keys and Vice's (now Century 21) failure to help resolve his problem. He cited as proof the financial burden his family suffered because he could not take the job at General Tire, being forced to remove his dyslexic daughter from her private school, the inability to provide his college student son with the extras he deserved, and lack of medical insurance for his family. There was never *365 an attempt to evict the Corsons or to take possession of their home. There was never an effort to enforce the liens. All but $43.00 of the liens, which had a payoff of approximately $10,500.00 at the time they were discovered, had expired by passage of time as of May 21, 1984, and the Corsons were informed that the final $43.00 had been satisfied in the fall of 1984. Mrs. Corson testified that Jim Corson became "almost obsessed" with the lien situation and that their marriage barely survived.
Jim Preston, manager of human resources at General Tire, testified that he would have hired Corson in 1982 but did not because the available position needed to be filled immediately and Corson said he was unable to move that quickly due to the legal problems with his home.
Corson admitted on cross examination that he had no agreement to pay Frank Whitaker any fee and that he understood Whitaker was not representing his (Corson's) interests. Corson also said he had relied on Frank Ferrell, the Dunn & Webb attorney who performed the title update, and the realtors to represent his interests.
James Marsh testified as an expert for the purposes of calculating after-tax income and loss-of-use of income. He opined that because Corson did not go to work for General Tire in 1982, he lost the use of over $25,000.00 that year, more than $38,000.00 in 1983, almost $45,000.00 in 1984, approximately $40,000.00 in 1985, over $31,000.00 in 1986, and almost $20,000.00 in 1987. On cross, Marsh revealed that he did not have all pertinent information upon which to base the most accurate opinion, he did not consider Corson's unemployment income, the figures he was given to work with did not match the tax returns filed by Corson, and portions of Corson's tax returns, upon which he had relied, were improperly completed. Marsh stated on re-direct that the discrepancies made known to him on cross would only change his figures by $3,000.00 or $4,000.00 cumulatively.
Mrs. Corson testified that an offer of settlement had been made to pay the liens in full prior to May, 1984, which she and Mr. Corson rejected. Welborne Johnson, the attorney representing Steighner's insurance company, also testified that he had offered to settle for payment of the liens prior to the time this lawsuit was filed but the Corsons' attorney rejected the offer stating that it would take much more money than that.
Donald Steighner testified that he was not aware of the practice of one attorney doing updated title opinions from another attorney's work and that he would not do it. Steighner first became aware that there was a problem with his handling of the title work for the Meiers in 1981 or early 1982 when Jim Corson contacted him. Steighner testified that he notified his errors and omissions carrier of the problem. Steighner also contacted the building company against whom the liens were filed and was told the liens were being paid. He later learned that the building company was not referring to the same liens that he and the Corsons were discussing. Steighner's attorney stipulated at trial that Steighner was negligent in examining title for the Meiers.
David Smith, the attorney who performed title work for the Corsons and discovered the existing liens, testified that it was common practice in the Columbus area to update title opinions prepared by other attorneys in assumption sales situations. He also stated that in his opinion it was a bad practice. Smith said he would advise a full title search to his clients in assumption sales situations.
Representing Century 21 in a 30(b)(6) deposition, which was read into the record at trial, Thomas Vice said an update was never recommended by his company. His opinion regarding title updates was that it was not a sound practice unless the same firm did both the original search and the update. In his testimony at trial, Vice said that all brokers are agents of the sellers pursuant to the Multiple Listing Service rules and regulations and that this fact is routinely disclosed to purchasers. He also testified that brokers representing the seller do not have contact with the purchasers.
Randy Luker, the listing agent for the Meiers in the transaction with the Corsons, *366 testified that the Meiers requested the firm of Dunn & Webb to prepare the warranty deed. He reported this information to Mary Beth Craft, a loan closing officer at Century 21, and she phoned Dunn & Webb. Luker denied ever giving any advice to the Corsons and said he had no contact with them as it would have been unethical.
Mary Beth Craft testified that she phoned Dunn & Webb as instructed by Luker. Frank Whitaker asked her to order an updated title for the Corsons when she ordered the assumption warranty deed from Dunn & Webb. Frank Ferrell of Dunn & Webb discovered that an easement needed to be obtained to provide access to the property before closing. Upon learning of this, Mary Beth Craft informed Luker, who asked her to call Steighner and have him resolve the problem. When the easement problem was resolved, a closing date was set.
Frank Whitaker claimed not to remember whether he informed the Corsons that he represented the sellers. Whitaker stated that he always discussed the two types of titles available to purchasers on an assumption. In response, Corson asked which was cheaper and upon learning an update would cost less, he chose to have only an update done. Whitaker testified that Corson left the choice of attorney to him (Whitaker). He then called Mary Beth Craft and asked her to order an update for the Corsons from the same firm supplying the assumption warranty deed. Whitaker testified that Corson had not mentioned Taylor Smith doing the title work and that the first time he heard the name "Taylor Smith" is when Jim Corson phoned him to discuss bringing this lawsuit.
Charles Garrick, whom Jim Corson testified would have purchased his home had it not been for the liens, testified that he and his wife decided, after looking at the house, not to make an offer because they simply were not interested in buying that particular house. He further stated unequivocally that the liens were not a factor in deciding not to make an offer on the Corsons' home.
Roberta (Robbie) Earhart testified as an expert in real estate practices in the Columbus area. She testified that real estate brokers generally informed purchasers of the types of title work available to them and the cost; purchasers were advised to see an attorney if they had questions. She also testified that pursuant to the Multiple Listing Service agreement, real estate agents who procured a buyer were agents of the seller. She further testified that in her opinion the Corsons' house could have sold in 1982 for approximately $74,000.00.

THE LAW

APPELLANT CENTURY 21 DEEP SOUTH PROPERTIES

REVERSIBLE ERROR EXISTS DUE TO THE REFUSAL OF THE TRIAL COURT TO GRANT APPELLANT CENTURY 21 DEEP SOUTH PROPERTIES' MOTIONS FOR SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW.
Uniform Chancery Court Rule 4.01 and Mississippi Rule of Civil Procedure 52 authorize the court to make specific findings of fact and state separately its conclusions of law thereon. While M.R.C.P. 52 gives the court discretion to make such findings absent a party's request, it further provides, as does Uniform Chancery Court Rule 4.01, that a chancellor "shall" make such findings when required or requested by a party to the suit.
In Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236, 239 (Miss. 1987), on remand (for findings of fact and conclusions of law), 537 So.2d 1331 (Miss. 1989), we held that in complex cases tried upon the facts without a jury, M.R.C.P. 52 should be construed to read that the court "generally should" find facts specially and separately state its conclusions of law thereon even absent a request by a party. Failure to do so will be found an abuse of discretion. Id. Although referring to an administrative agency or commission acting as the fact finder, this Court in Duckworth v. State Bd. of Pharmacy, 583 So.2d 200, 202 (Miss. 1991), said that standing alone, the failure to make findings of fact is not generally cause for reversal. However, *367 this statement was made in conjunction with the caveat that the failure to recite the facts found is the only defect; otherwise the entity proceeded on a correct theory of law or the omission does not impede proper review by the reviewing court. Id.
In this case there were requests that the chancery court make particularized findings of fact and conclusions of law revealing the basis of Century 21's liability; the judge declined to do so but did make general findings of fact and conclusions of law. Technically, the chancellor has complied with the requirements of M.R.C.P. 52 and Uniform Chancery Court Rule 4.01. Although particularized findings would have aided us in reviewing this cause, there is no ground for reversal on this issue.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ITS ITS APPARENT FINDING OF AGENCY AND/OR SUB-AGENCY BETWEEN THE CORSONS AND APPELLANT CENTURY 21 DEEP SOUTH PROPERTIES LTD. AND FRANK WHITAKER AND CENTURY 21.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY HOLDING APPELLANT CENTURY 21 DEEP SOUTH PROPERTIES LIABLE TO THE CORSONS WHEN THERE WAS NO EVIDENCE OF ANY BREACH OF ANY LEGAL DUTY BY APPELLANT CENTURY 21 DEEP SOUTH PROPERTIES TO THE CORSONS.
"On appeal this Court will not reverse a Chancery Court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings." Cooper v. Crabb, 587 So.2d 236, 239 (Miss. 1991), citing Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987); Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Gilchrist Machinery Co., Inc. v. Ross, 493 So.2d 1288, 1292 (Miss. 1986). "Unless the Chancellor's determination of fact is manifestly wrong, this Court will uphold his decision." Cheeks v. Herrington, 523 So.2d 1033, 1035 (Miss. 1988), citing Dillon v. Dillon, 498 So.2d 328, 329 (Miss. 1986); Dubois v. Dubois, 275 So.2d 100 (Miss. 1973).
This Court does not sit to redetermine questions of fact. Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985), on motion for statutory damages, 480 So.2d 519 (Miss. 1985). When substantial evidence supports the findings of the Chancellor we will not disturb his conclusions, notwithstanding that we might have found otherwise as an original matter. Jim Murphy & Associates, Inc. v. LeBleu, 511 So.2d 886, 894 (Miss. 1987), affirmed following remand, 557 So.2d 526 (Miss. 1990).
Generally, when there are no specific findings of fact, this Court will assume that the trial court made determinations of fact sufficient to support its judgment. Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987); Rives v. Peterson, 493 So.2d 316, 317 (Miss. 1986). Where there are no specific findings of fact provided by the chancellor, this Court must look to the evidence and see what state of facts will justify the decree. Pace, 511 So.2d at 492; Boatright v. Horton, 233 Miss. 444, 102 So.2d 373, 374 (1958).
It should be noted that "[a]s a practical matter, we can better perform our function if we know what the trial court did, and why." Tricon Metals & Services, Inc., 516 So.2d at 239. This Court "may not credit unspoken findings not fairly inferrable from the trial court's action." Riddle v. State, 580 So.2d 1195, 1200 (Miss. 1991).
The trial court found Century 21 liable to the Corsons on a negligence theory. The only finding of fact which relates to this issue is that Frank Whitaker was the agent for the Corsons and later also became an agent for the Meiers, which the trial court further stated was a legal impossibility. No factual findings regarding any duty owed by Century 21 or regarding agency between Century 21 and either the Corsons or Whitaker were recited. Nonetheless, the Corsons argue that Century 21 owed them the duty to provide a full title opinion on the property as opposed to an update.
Jim Corson testified that Whitaker told him the responsibility for having title work done was his (Corson's), but that Century *368 21 had already ordered the work from an attorney other than the one Corson had selected. Corson elected to rely on the opinion obtained by Century 21. He claims Whitaker did not discuss the difference between a full title search and an update; Whitaker testified that he told Corson an update was cheaper and Corson chose to have an update performed. The evidence shows that Whitaker then phoned Mary Beth Craft at Century 21 and asked her to order an update from Dunn & Webb, the firm that was to provide the assumption warranty deed. Craft followed these instructions and Frank Ferrell, an associate at Dunn & Webb, performed the title work. Dunn & Webb had not performed the prior title work. Century 21, in its 30(b)(6) deposition, stated that it did not order title updates as opposed to full title searches unless the prior title work had been performed by the same attorney who was to do the update. This policy was followed in order to prevent legal problems such as the one at issue here.
It is basic tort law that before one can be found negligent he must owe a duty to the injured party. There is no contractual duty between Century 21 and the Corsons and Mississippi case law reveals no duty owed by a real estate broker to the purchaser of property. A finding that Whitaker was an agent of Century 21 would not create this duty. However, Century 21 became a gratuitous agent of the Corsons and therefore owed them a duty of care because it undertook the task of ordering title work for the Corsons. Higgins Lbr. Co. v. Rosamond, 217 Miss. 1, 7-9, 63 So.2d 408, 410-11 (1953). See also Coleman v. Louisville Pants Corp., 691 F.2d 762, 766 (5th Cir.1982). Again, whether Whitaker was an agent for Century 21 is irrelevant to this duty. In fact, the evidence shows that Whitaker was an agent of the Meiers' by virtue of the Multiple Listing Service agreement.
The trial court found Century 21 liable to the Corsons in negligence. Only under a gratuitous agency theory does Century 21 owe a duty to the Corsons and we will assume such a factual finding to support the judgment below. There is no evidence tending to show that the chancellor was manifestly wrong in this implied finding nor is there any reason to assume that the chancellor found Whitaker was an agent of Century 21. There was no error here.
As the chancellor found Century 21 liable to the Corsons under a negligence theory, we will further assume he found a breach of legal duty by Century 21. There was ample evidence presented that an updated title opinion was insufficient under the circumstances of this case. (Testimony of Frank Ferrell, Donald Steighner, David Smith, and Century 21 via Thomas Vice). But Century 21 and Whitaker, real estate brokers pursuant to Miss. Code Ann. § 73-35-3 (Supp. 1991), had no duty to advise the Corsons, who were free to retain their own attorney for advice on this matter. Century 21 was the agent of the Meiers, the sellers in this transaction. Whitaker, by virtue of the Multiple Listing Service agreement, was also an agent of the Meiers. Real estate brokers have a duty to act solely for the benefit of their principals in all matters connected with the agency. Smith v. Sullivan, 419 So.2d 184, 187 (Miss. 1982).
Neither Century 21 nor Whitaker owed the Corsons any duty until they offered to order the title work selected by Jim Corson. (As all claims against Whitaker were dismissed with prejudice following execution of a covenant not to sue, we need not address any duty he may have owed the Corsons.) The duty of Century 21's gratuitous agency was limited by its scope  to obtain a title update on the subject property.
Century 21 assumed a limited duty of care to the Corsons when it gratuitously undertook the task of obtaining title work for them. Jim Corson chose to have only an update done because it was cheaper. Century 21 owed the Corsons a duty to use care in obtaining this update or to give notice that it would not obtain the update while the Corsons had other means available to obtain the update. Higgins, 217 Miss. at 8, 63 So.2d 408. Century 21 ordered the update and the work was performed *369 competently by Frank Ferrell of Dunn & Webb. There was no breach of the duty assumed by Century 21.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR DUE TO THE FAILURE TO DISMISS CENTURY 21 DEEP SOUTH PROPERTIES AT THE END OF PLAINTIFFS' CASE IN CHIEF.
At the close of the plaintiffs' case Century 21 moved that the trial court dismiss it pursuant to M.R.C.P. 12(b)(6), failure to state a claim upon which relief can be granted. At this point in the proceedings, the proper motion would have been a motion to dismiss pursuant to M.R.C.P. 41(b). The judge must consider the evidence fairly, rather than in the light most favorable to the plaintiff. Ainsworth v. Callon Petroleum Co., 521 So.2d 1272, 1274 (Miss. 1987); Mitchell v. Rawls, 493 So.2d 361, 362 (Miss. 1986). If he would find for the defendant, the case should be dismissed. Smith v. Smith, 574 So.2d 644, 649 (Miss. 1990), citing Davis v. Clement, 468 So.2d 58, 61 (Miss. 1985); Ezell v. Robbins, 533 So.2d 457, 460 (Miss. 1988); Mitchell, 493 So.2d at 362-63. The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case. Smith, 574 So.2d at 649, citing Davis, 468 So.2d at 61. This Court applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b). Ainsworth, 521 So.2d at 1274, citing Davis, 468 So.2d at 62; Ezell, 533 So.2d at 460. Although the defendant retains the right to challenge the weight or sufficiency of the evidence to sustain the judgment against him, appeal of the denial of a motion to dismiss made at the conclusion of the plaintiff's case will be waived if the defendant proceeds with his case. Stallings v. Bailey, 558 So.2d 858, 859 (Miss. 1990).
The evidence before the court showed that although initially owing no duty to the Corsons, Century 21 by its actions created a duty. As discussed previously, there was no breach of this duty by Century 21. Even assuming the hurdles of breach and causation have been cleared, a party alleging negligence must then prove damages. Lyle v. Mladinich, 584 So.2d 397, 399 (Miss. 1991); May v. V.F.W. Post No. 2539, 577 So.2d 372, 375 (Miss. 1991). Despite the chancellor's findings, the Corsons failed in this endeavor. There being no breach and insufficient proof of damages, Century 21 could not be liable to the Corsons in negligence, the only theory alleged. Considering the evidence fairly, the trial court should have granted the motion to dismiss. However, because Century 21 went forward with proof of its own, it waived the right to appeal this issue. If we review this point as though Century 21 had challenged the weight or sufficiency of the evidence to sustain the judgment against it, we must look at all evidence in the record and not merely that before the court at the time of the motion to dismiss. Stallings, 558 So.2d at 859. Even from this point of reference the Corsons failed to prove both breach and damages. The trial court was manifestly in error and we reverse and render as to Century 21.

THE TRIAL COURT COMMITTED ERROR THROUGH THE ADMISSION OF THE TESTIMONY OF JAMES T. MARSH.
"The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State, 567 So.2d 237, 238 (Miss. 1990), citing Hentz v. State, 542 So.2d 914, 917 (Miss. 1989); Monk v. State, 532 So.2d 592, 599 (Miss. 1988). Unless the trial judge's discretion is so abused as to be prejudicial to a party, this Court will not reverse his ruling. Shearer v. State, 423 So.2d 824, 826 (Miss. 1983), citing Page v. State, 295 So.2d 279 (Miss. 1974). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston, 567 So.2d at 238. See M.R.E. 103(a), 104(a).
Marsh testified as an expert on tax preparations and calculations and loss of use of income in an effort to prove the amount of loss of use of income sustained *370 by Jim Corson. It appears that Marsh was properly qualified as an expert based on his knowledge, skill, experience, training, and education as required by M.R.E. 702. Rule 702 also requires that testimony of an expert help the trier of fact understand the evidence or determine a fact in issue. Marsh's testimony did neither. The chancellor did not need assistance understanding the evidence and it does not appear that Marsh's testimony was offered for this purpose. Rather, it seems his testimony was offered to help the chancellor determine the amount of damages suffered by the Corsons, but this was not a fact at issue.
Marsh testified as to the amount of income lost by the Corsons due to Jim Corson's failure to take the out of state job available to him in 1982. There was no proof that Jim Corson was unable to take the job; Jim Corson told the company he could not take the job as he was unable to move due to legal problems with his house. Jim Corson could have attempted to sell his house or could have rented his home and moved to accept the job, if it had been actually offered to him. Instead, he chose to remain unemployed. As Corson's unemployment was not a result of the liens on the house, any loss of income he sustained is not relevant to this case. Pursuant to M.R.E. 402, the testimony of James Marsh should not have been admitted. The trial court failed to exercise its discretion within the boundaries of the Mississippi Rules of Evidence. However, as Century 21 should not have been found liable to the Corsons even with the admission of Marsh's testimony, it can not be said that Century 21 suffered prejudice as a result of the chancellor's error. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected... ." M.R.E. 103(a). There is only harmless error here.

THE TRIAL COURT COMMITTED ERROR THROUGH THE ADMISSION OF THE TESTIMONY OF ROBBIE EARHART AS TO THE CORSONS' DAMAGES.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY THE AWARD OF DAMAGES AGAINST CENTURY 21 DEEP SOUTH PROPERTIES.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN THE APPARENT HOLDING THAT CENTURY 21 DEEP SOUTH PROPERTIES, LTD., WAS LIABLE FOR ACTIONS OR IN-ACTIONS OF FRANK WHITAKER.

THE DAMAGES AWARDED BY THE TRIAL COURT FOR LIENS ON THE CORSONS' PROPERTY ARE IN ERROR AS THE CORSONS NEVER LISTED THEIR PROPERTY FOR SALE WHILE THE LIENS EXISTED.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT APPLYING TO CORSONS THE DOCTRINES OF ASSUMPTION OF RISK AND/OR CONTRIBUTORY NEGLIGENCE.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REQUIRING A REALTOR/BROKER TO ABIDE BY THE STANDARDS OF AN ATTORNEY.
Appellant's failure to cite any authority in support of these assignments of error precludes this Court from considering these claims on appeal. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990); Kelly v. State, 553 So.2d 517, 521 (Miss. 1989), citing Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158; Shive v. State, 507 So.2d 898 (Miss. 1987), and Pate v. State, 419 So.2d 1324 (Miss. 1982).

APPELLANTS GREGORY AND WANDA MEIERS

THE APPELLEES WERE NOT ENTITLED TO DAMAGES, OTHER THAN NOMINAL DAMAGES, AGAINST GREGORY A. MEIERS AND WANDA M. MEIERS FOR THEIR BREACH OF THE WARRANTY CONTAINED IN THE ASSUMPTION WARRANTY DEED.
*371 In reviewing errors of law, this Court proceeds de novo. Cooper v. Crabb, 587 So.2d 236, 239 (Miss. 1991); Holliman v. Charles L. Cherry & Associates, 569 So.2d 1139, 1147 (Miss. 1990); Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990).
The chancellor did not state which warranty was breached by the Meiers. The contract of sale, executed by the Meiers and the Corsons in the month prior to the execution of the assumption warranty deed, recites that the Meiers' agree to "tender Warranty Deed conveying Good and Merchantable Title... ." Although the Corsons only alleged a breach of the assumption warranty deed in their complaint(s) they argue breach of the contract of sale on appeal. As this Court need not address an issue raised for the first time on appeal, we turn immediately to breach of the assumption warranty deed.
The chancellor found the Meiers jointly and severally liable to the Corsons in the amount of $75,000.00 for breach of warranty. That the Corsons acquired the land by warranty deed from the Meiers is undisputed. The granting clause of the deed reads as follows, "grantors, do hereby convey and warrant unto ... grantees, ... ." "The effect of the word `warrant' in a conveyance, with no restrictive words, embraces all five covenants known to common law, i.e., seisin, power to sell, freedom from incumbrance, quiet enjoyment and warranty of title. Mississippi Code Annotated § 89-1-33 (1972)." Greenlee v. Mitchell, 607 So.2d 97 (Miss. 1992).
The covenants of seisin and power to sell are an assurance that the grantor has the estate he purports to convey and are breached if a third person has a title that may defeat the estate granted by the grantor. Howard v. Clanton, 481 So.2d 272, 276 (Miss. 1985); H. Weston Lumber Co. v. Lacey Lumber Co., 123 Miss. 208, 85 So. 193, 195 (1920). There was no allegation and no proof that these covenants were breached. The covenants of quiet enjoyment and warranty of title are breached only by eviction or the equivalent thereof. Howard, 481 So.2d at 275; Bridges v. Heimburger, 360 So.2d 929, 931 (Miss. 1978). Again there were no allegations or proof that either of these covenants were breached.
The only remaining covenant is freedom from incumbrance, which is a guarantee that the property is not subject to any rights or interests that would diminish the value of the land. Howard, 481 So.2d at 275. Howard cites mortgages, easements and liens as examples of interests that would diminish the value of the land and therefore, breach the covenant of freedom from incumbrance. Id. There were four liens on the property conveyed by the Meiers to the Corsons at the time of the conveyance. The covenant of freedom from incumbrance was breached.
The liens on the property were removable incumbrances as opposed to permanent incumbrances such as easements. Damages available for a breach of the covenant of freedom from incumbrance by a removable incumbrance are limited to the reasonable expense of removing it, not to exceed the value of the land. Simon v. Williams, 140 Miss. 854, 867, 105 So. 487 (1925). If the incumbrance is not extinguished by the land owner, a mere technical breach is effected and only nominal damages are recoverable. Id.; Stokely v. Cooper, 150 Miss. 143, 157, 116 So. 538, 540 (1928). That is the situation in this case: the Corsons are entitled to only nominal damages.
Attorney fees are only allowed if the land owner incurs such fees curing or defending title pursuant to a breach of warranty. Bridges, 360 So.2d at 932. "[A] fee incurred by the Covenantee in bringing an action against the Covenantor for damages will in no instance be allowed." Id.
There being only a technical breach of the covenant of freedom from incumbrance, the Corsons are entitled to only nominal damages and no attorney fees from the Meiers. The chancellor was wrong as a matter of law. We reverse and remand as to the Meiers for a determination of nominal damages.

*372 IF THE APPELLEES ARE ENTITLED TO A JUDGMENT AGAINST GREGORY A. MEIERS AND WIFE, WANDA M. MEIERS, THEN THE MEIERS SHOULD RECOVER THE AMOUNT OF THE JUDGMENT FROM DONALD J. STEIGHNER IN ADDITION TO THE AMOUNT AWARDED BY THE LOWER COURT.
Again, we are presented with a question of law which requires a de novo review by this Court. Cooper, 587 So.2d at 239. The Meiers pursued a malpractice claim against Steighner to recover any amount they would be ordered to pay the Corsons. The Meiers were found jointly and severally liable to the Corsons in the amount of $75,000.00. The chancellor found Steighner liable to the Meiers in the amount of $5,000.00 due to his negligence in examining their title. In light of the determination of the first issue presented for appeal by the Meiers, above, the Meiers should only be liable to the Corsons for nominal damages.
A legal malpractice case requires proof by a preponderance of the evidence the following: (1) existence of a lawyer-client relationship; (2) negligence on the part of the lawyer in handling the affairs entrusted to him; (3) proximate cause; and (4) injury. Hickox v. Holleman, 502 So.2d 626, 633 (Miss. 1987). In the case at bar there is no dispute that a lawyer-client relationship existed and Steighner's negligence in handling the title work for the Meiers was stipulated at trial. That leaves only proximate cause and injury.
In the usual legal malpractice case, in order to prove proximate cause the plaintiff must show that but for his attorney's negligence he would have been successful in the prosecution or defense of the underlying action. Hickox, 502 So.2d at 634. In the context of the present case, the Meiers carry their burden because but for Steighner's negligence they would not have been named as defendants in the first place. Proof of the injury suffered by the Meiers is equally clear  the amount of damages they are ordered to pay the Corsons and the amount of attorney fees incurred in this action.
The trial court was manifestly in error when it failed to award the Meiers a sum sufficient to cover the amount they were ordered to pay the Corsons and the amount of attorney fees incurred by the Meiers in this action. On remand the Meiers are entitled to indemnity from Steighner for the amount of nominal damages determined and for their attorney fees incurred in this action.

APPELLANT DONALD J. STEIGHNER

MISSISSIPPI REQUIRES AN ATTORNEY CLIENT RELATIONSHIP IN AN ACTION BASED ON ATTORNEY OR LEGAL MALPRACTICE.
The chancellor found Steighner jointly and severally liable to the Corsons in the amount of $75,000.00 due to his negligence in performing title work for the Meiers. Additionally, punitive damages in the amount of $50,000.00 were awarded the Meiers for Steighner's gross negligence in frustrating the Corsons' efforts to solve the title problems he created. This assignment of error must receive a de novo review as it involves a question of law. Cooper, 587 So.2d at 239.
This Court has indeed consistently held that a legal malpractice action requires an attorney-client relationship. Singleton v. Stegall, 580 So.2d 1242, 1244 (Miss. 1991); Hickox v. Holleman, 502 So.2d 626, 633 (Miss. 1987); Hutchinson v. Smith, 417 So.2d 926, 927 (Miss. 1982). The Corsons do not claim such a relationship with Steighner. The fact that Steighner corrected the easement problem discovered by Dunn & Webb in the course of their title update for the Corsons, at the request of Century 21, did not create an attorney-client relationship between Steighner and the Corsons. Even if such a relationship had been created when Steighner did the corrective work, the Corsons could not recover as they have proven no damages.

EVEN UNDER EXPANDED THEORIES OF LIABILITY, THE CORSONS CANNOT RECOVER HERE BECAUSE *373 NEITHER THEY, NOR THEIR ATTORNEY, RELIED ON WORK PERFORMED BY STEIGHNER.
As stated above, the Corsons do not claim an attorney-client relationship with Steighner. Instead, they rely on Miss. Code Ann. § 11-7-20 (Supp. 1990), which abolished the necessity of privity in "all causes of action for ... economic loss brought on account of negligence, ...", and claim reliance on Steighner's title opinion. It is argued by Steighner that the Corsons did not rely on his title opinion, therefore liability could not be imposed upon him. Although no copy of Steighner's title opinion was requested or received by the Corsons, in choosing to have only an update performed they indeed relied on the accuracy of Steighner's prior title work. But this is not the determinative issue.
Regarding § 11-7-20, we have said: "[a] plain reading of the statute clearly suggests that it was the legislative intent to remove the privity requirement in all cases." Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 673 (Miss. 1983). However, the effective date of Miss. Code Ann. § 11-7-20 was 1976. The cases cited above for the proposition that an attorney-client relationship is necessary in a legal malpractice action were all decided after 1976. While privity is a necessary component of the attorney-client relationship, a requirement of privity in other cases of negligence is "forbidden under our law." Touche Ross v. Commercial Union Ins., 514 So.2d 315, 321 (Miss. 1987).
Our case law regarding legal malpractice is, to the extent that privity is required, in conflict with Miss. Code Ann. § 11-7-20 unless there is a distinction between garden variety negligence cases and actions for legal malpractice. The elements of negligence are duty, breach, proximate cause, and damages. Lyle v. Mladinich, 584 So.2d at 398-99. The elements of legal malpractice are attorney-client relationship (which imposes a duty), negligence (breach), proximate cause, and damages. Hickox, 502 So.2d at 633. At most, a legal malpractice action is a negligence action dressed in its Sunday best.
Even if these are viewed as two separate and distinct causes of action, does one's status as an attorney insulate him from a suit based on negligence wherein the plaintiff would be required to prove only the traditional elements of duty, breach, proximate cause, and damages? Although found only in dicta [Beaman v. Helton, 573 So.2d 776 (Miss. 1990) (Sullivan, J., dissenting)], this Court required a traditional doctor-patient relationship as an element in medical malpractice cases until our decision in Meena v. Wilburn, 603 So.2d 866, 869 (Miss. 1992).
In Meena, which overruled Beaman to the extent that it held a negligence action against a doctor required a doctor-patient relationship, we stated that the presence or absence of a doctor-patient relationship is merely a factor to consider in determining the duty owed. Meena, 603 So.2d at 870. Although Miss. Code Ann. § 11-7-20 was not mentioned in Meena (it was not an issue; a requirement of doctor-patient relationship would of necessity require proof of privity, as does a requirement of attorney-client relationship, but in Meena there was actual privity while there is not in the case at bar), we find that the same reasoning should apply to negligence actions against attorneys, to wit: the presence or absence of an attorney-client relationship is merely one factor to consider in determining the duty owed rather than being the single factor which establishes that a duty is owed. Applying the Meena reasoning to legal malpractice actions, the question "to whom is a duty owed?" takes center stage.
In this context, Touche Ross v. Commercial Union Ins., 514 So.2d 315 (Miss. 1987), which dealt with liability of independent auditors, is helpful. In Touche Ross, we rejected limiting liability to known third parties because of Miss. Code Ann. § 11-7-20. Id. at 321. Instead, we found that
an independent auditor is liable to reasonably foreseeable users of the audit, who request and receive a financial statement from the audited entity for a proper business purpose, and who then detrimentally rely on the financial statement, *374 suffering a loss, proximately caused by the auditor's negligence.
Touche Ross, 514 So.2d at 322. Auditors were advised that they could protect themselves from liability to an unlimited number of users by entering into an agreement with the audited entity limiting dissemination of the audits. Id. at 322-23. See also Strickland v. Rossini, 589 So.2d 1268 (Miss. 1991) (liability of experts or professional persons negligently supplying information upon which others rely extends to foreseeable recipients).
Limitation of liability in this manner is applicable to an attorney performing title work upon which another attorney's client subsequently relies, as is the case with a title update. Although a copy of the title opinion is not necessary, the client of an attorney performing a subsequent update relies upon the fact that the prior title opinion revealed any encumbrances or deficiencies of title. Reliance on a licensed professional to perform his work competently is imminently reasonable. However, any title deficiencies or encumbrances of record would still effect constructive notice.
Today we modify the requirements of legal malpractice actions based on an attorney's negligence in performing title work by abolishing the requirement of attorney-client relationship and extending liability to foreseeable third parties who detrimentally rely, as we have done in cases involving other professions. An attorney performing title work will be liable to reasonably foreseeable persons who, for a proper business purpose, detrimentally rely on the attorney's title work, suffering loss proximately caused by his negligence. Unfortunately for the Corsons, they still do not prevail as they have failed to prove damages  a necessary element in any event.

CROSS-APPEAL

WAS THE TRIAL COURT MANIFESTLY IN ERROR IN CUTTING THE CORSONS' DAMAGES IN HALF WHEN THE PROOF OF LOSS OF WAGES WAS UNDISPUTED?
The Corsons argue that the testimony of Jim Preston and James Marsh established damages in the amount of $156,935.00 for lost after-tax income. As discussed previously, Jim Corson prevented Jim Preston from offering him a job by stating that he could not accept a position out of state immediately because of legal problems with his house. There was no evidence that he could not sell his house because of the liens in existence at the time. James Marsh's testimony was therefore irrelevant and should not have been admitted. The chancellor did err, but the error was an award of damages at all rather than an award in an amount less than requested. In light of our disposition of previous issues, this issue is moot.

WAS THE TRIAL COURT IN ERROR IN RULING THAT THE OFFERING OF AN ATTORNEY FOR PROOF ON ATTORNEY'S FEES OPERATED AS A WAIVER OF ATTORNEY-CLIENT PRIVILEGE GENERALLY?
This final assignment of error must receive a de novo review as it involves a question of law. Cooper, 587 So.2d at 239. The Corsons offered testimony of Edwin Hannan, the attorney who represented them previously in this matter, to prove the amount of attorney fees they had incurred. In response to Hannan's claim of attorney-client privilege the Corsons waived the privilege limited to the issue of attorney fees. When Hannan attempted to remove cover letters from billings before their introduction into evidence, again asserting attorney-client privilege, the chancellor determined that the waiver of privilege must be for all purposes or for none at all. In response to this, Hannan was dismissed as a witness and the waiver was withdrawn.
The attorney-client privilege can be waived for limited purposes. In Bennett v. State, 293 So.2d 1, 5 (Miss. 1974), overruled on other grounds, 579 So.2d 555, 559 (Miss. 1991), this Court found that testimony by a client regarding communications with his attorney about the possibility of appeal operated as a waiver of the privilege on the "sole issue of whether *375 or not a discussion of appeal was had." Although in Bennett the testimony of the client was an accusation against his attorney and a limited waiver of privilege allowed the attorney to respond to this attack, it nonetheless allowed a partial waiver of attorney-client privilege. As limited waiver is allowed to benefit the attorney, limited waiver is allowed to benefit the client as well. The chancellor erred on this issue but the Corsons were not prejudiced by his erroneous determination.
Mississippi follows the American rule regarding attorney fees: unless a statute or contract provides for imposition of attorney fees, they are not recoverable. Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss. 1986). When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper. Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987). In this case there is neither a contractual provision nor a statute providing for attorney fees. As the Corsons failed to prove actual damages, no punitive damages are warranted. Finding only harmless error, we affirm on this issue.

CONCLUSION
It can be said as a matter of law that Century 21 gratuitously assumed a duty to the Corsons to obtain a title update on the subject property or to give notice that it would not have the title work done while the Corsons had other means available to obtain the update. Even viewing all evidence in the record, there was no breach of the duty assumed by Century 21. It follows that Century 21 could not have been liable to the Corsons under a theory of negligence. Accordingly, we reverse and render as to Century 21.
We affirm the chancellor's finding that Steighner was negligent as regards the Meiers. The Corsons are entitled to only nominal damages and no attorney fees from the Meiers as there was merely a technical breach of the covenant of freedom from incumbrance. As the Meiers would not have been liable to the Corsons but for Steighner's negligence, the Meiers are entitled to indemnity from Steighner in a sum sufficient to cover the amount of their attorney fees and the nominal damages they must pay the Corsons. As to the Meiers, we affirm the chancellor's finding of breach of warranty. We reverse and remand to the Chancery Court of Lowndes County for a determination of nominal damages due the Corsons and for proper determination of the amount of the Meiers' indemnity from Steighner, consistent with this opinion.
With this opinion we modify legal malpractice actions based on an attorney's negligence in performing title work by abolishing the requirement of attorney-client relationship and extending liability to foreseeable third parties who detrimentally rely on such title work, suffering a loss, proximately caused by the attorney's negligence. The presence or absence of an attorney-client relationship is now merely one factor to consider in determining the duty owed. Notwithstanding this modification, we reverse and render as to the Corsons' claim against Steighner because the Corsons failed to prove damages.
ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART TO THE CHANCERY COURT OF LOWNDES COUNTY, MISSISSIPPI, FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ON CROSS-APPEAL: AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.