724 So.2d 1116 (1998)
LEE HAWKINS REALTY, INC., Appellant,
v.
Phillip W. MOSS and Susan Burton Williams, Appellees.
No. 97-CA-00711 COA.
Court of Appeals of Mississippi.
December 18, 1998.
*1117 Phillip M. Nelson, Attorney for Appellant.
Joseph L. McCoy, Jackson, Roxanne Penton, Madison, Attorneys for Appellees.
BEFORE BRIDGES, C.J., PAYNE, and SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Philip Moss brought suit against all the other parties to the transaction by which he purchased his home. He alleged that he had been misled into believing there was a warranty on the structure. The Rankin County Chancery Court awarded damages to be paid by his realty company, Lee Hawkins Realty, but against no other party. Lee Hawkins Realty appeals, arguing that others were responsible for the damages. We disagree and affirm.

FACTS
¶ 2. David and Molly Davis owned a home in Brandon, Mississippi. In the summer of 1986, they listed their home for sale through Susan Burton Williams, a real estate agent affiliated with Berg Realty, Inc. Williams participated in the Multiple Listing Service for the Jackson area.
¶ 3. Phillip Moss and his wife, Dana, were moving to Mississippi from North Carolina. They contacted Lee Hawkins Realty and met with David Anderson, an associate real estate broker. The Mosses informed Anderson that they were only interested in purchasing a home that had a "2-10" homeowner's warranty policy in effect. Such a warranty covers major appliances and other components within the home for a period of two years and covers structural problems for ten years.
¶ 4. Anderson ran the Mosses' specifications through a computer listing service which retrieved a list of approximately eight homes, one of which was the Davis home. He showed the Mosses the Davis home, at which time Mr. Davis informed Moss that his home was in fact covered by a 2-10 warranty. A sign posted on a tree in the front of the house stated that the warranty was in effect. After some negotiation, the Mosses entered into contract with the Davises. The contract provided that "[r]emainder of the 10 year warranty to be provided to purchaser."
¶ 5. On November 26, 1986, the parties met for closing. David Anderson was present *1118 representing the Mosses. The Davises and their agent, Susan Burton Williams, were also in attendance. The sellers selected the law firm of Taylor, Covington and Smith to close the purchase. Jackie Root, a paralegal at the firm, acted on its behalf. During the closing, Moss requested a copy of the 2-10 warranty. After inspecting an unsigned document provided by the paralegal, Moss became concerned. Root and Williams then left the room with the document in order to investigate. When they returned, Root informed Moss that they had verified that the warranty was in existence. According to Moss, Williams nodded her head affirmatively. Written at the bottom of the document was "Policy # 103321" and the words "per Cindy."
¶ 6. Relying on Root's representation, Moss proceeded with the closing. Several months later, he noticed structural damage to the home and attempted to recover under the warranty. However, he was informed that a warranty was never in existence for his home located at 103 Live Oak Lane. Rather, it was a neighboring home located at 103 Live Oak Cove which was covered under the warranty.
¶ 7. In 1992, Moss filed suit against Lee Hawkins Realty, David Anderson, David and Molly Davis, Berg Realty, and Susan Burton Williams, alleging breach of contract, negligent misrepresentation, breach of fiduciary duty, false advertising, and gross negligence. David Anderson was dismissed from the suit on January 17, 1997, due to his receipt of a final discharge in bankruptcy proceedings. On April 11, 1997, final judgment was entered against Lee Hawkins Realty and the Davises in the amount of $18,375, which included the cost of repairing the home and attorney's fees. The chancellor specifically found that Williams owed no duty to Moss. Williams's employer, Berg Realty, Inc., was administratively dissolved approximately ninety days before Moss filed suit. Although the chancellor made no finding with regard to the liability of Berg Realty, no issue is made regarding Berg on appeal. Lee Hawkins Realty is the appellant here.

DISCUSSION
¶ 8. This Court will accept a chancellor's finding of fact as long as the evidence in the record reasonably supports those findings. Estate of Chambers v. Jackson, 711 So.2d 878, 880 (Miss.1998). That means we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied.
¶ 9. The chancellor determined that Williams owed no duty to Mr. Moss due to the fact that she was the agent representing the sellers of the home, the Davises. The chancellor correctly noted that "[r]eal estate brokers have a duty to act solely for the benefit of their principals in all matters connected with the agency." Century 21 Deep South Properties v. Corson, 612 So.2d 359, 368 (Miss.1992). However, the duty owed by agents to act for the benefit of their principals does not insulate them from liability for knowing participation in misrepresentations.
¶ 10. Various duties owed by a real estate agent to the agent's principal were described in Smith v. Sullivan, 419 So.2d 184, 187 (Miss.1982). This description of duties was based in part on the enumeration in the Restatement of Agency. Id. (citing RESTATEMENT OF AGENCY §§ 376-398 (2d ed.1958)). An entirely different section of the Restatement describes the liability of agents to third parties in tort. RESTATEMENT, §§ 343-359A. An agent is not liable to third parties for breaches of the duties that he owes to his principal, but he is liable to third parties for, among other acts, deceitful conduct:
An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.
RESTATEMENT, § 348.
¶ 11. Among the Restatement examples is this: an agent who assists in a transaction with a buyer "knowing that the buyer is relying upon the previous misrepresentations by the principal or another agent is liable to the same extent as if he had made the previous misrepresentations." Id. cmt. a. *1119 Thus if Susan Burton Williams as agent for the sellers knew that there was no homeowner warranty but assisted in the misrepresentations, then she is liable in tort. On the other hand, since her duty is to her principal, she would not have been required to investigate to determine whether the warranty existed unless her principal so requested. She could rely upon what her principal told her.
¶ 12. To say, as Corson does, that case law "reveals no duty owed by a real estate broker to the purchaser of property," must be read in context. Corson, 612 So.2d at 368. A "broker is subject to act solely for the benefit of the principal in all matters connected with the agency," which means the agent can never act for the benefit of a third party to the detriment of the principal. Id, But the principal has no right to make misrepresentations. To the extent the agent assists in the deceit there can be liability imposed on the agent. Thus we find the chancellor to have been in error when he held that the "only duty owed by Susan Burton Williams in this entire transaction was to the sellers, David J. Davis and Molly A. Davis."
¶ 13. Though we find this error, we also note that it was a legal conclusion reached after all the evidence that the parties wished to introduce was presented. Nowhere in that body of testimony and documents is there any intimation that Susan Burton Williams knew that there was no warranty on the property and concealed her knowledge when others were stating, negligently or fraudulently, that there was one. She testified at trial that she had never been asked to determine if there was a warranty, that she did not investigate the question, and in fact never represented to anyone that there was a warranty. She never met the buyers until closing. David Anderson stated that he does not remember Williams ever saying that there was a warranty.
¶ 14. In fact, Williams stated that if she had known that there was no warranty, she would have told the buyers' agent. That is precisely what we have held her duty to have been, but it arises only if she became aware of the misrepresentations. In other words, telling the buyers' agent about the problem would not have been a violation of her duty to her principal, but would have been compliance with her duty not to participate in any negligent or fraudulent misrepresentation. There was no evidence to support a claim against Williams for events prior to closing.
¶ 15. In addition to possible misrepresentation prior to closing, Lee Hawkins Realty raises an issue regarding closing. A telephone call was made by either Williams or the paralegal, Root, on the day of closing. We agree that by placing this telephone call, both Williams and Root could have become gratuitous agents acting on Moss's behalf. Since Root is not a party to this action, we will only discuss the liability of Williams.
¶ 16. A gratuitous relationship arises when an individual makes a promise or engages in other conduct which (1) "he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent," and, (2) "which causes the other to refrain from having such acts done by other available means." RESTATEMENT OF AGENCY § 378 (1957). A gratuitous agency was created in Corson when the seller's agent performed title work for the purchaser. By that act "Century 21 became a gratuitous agent of the [purchasers] and owed them a duty of care...." Corson, 612 So.2d at 368.
¶ 17. If Williams became the Mosses' gratuitous agent, liability would not arise unless Williams failed to meet the standard of care in carrying out the limited duty to determine whether the warranty was valid. We address the causation issue without resolving whether the agency ever arose.
¶ 18. Root testified that she had no recollection of the details of the closing. Although she did not remember calling the warranty office, she admitted that it may have occurred. She denied that the handwriting at the bottom of the warranty was hers. Williams likewise has no recollection of the events that occurred the day of the closing. She does not remember leaving the room with Root in order to verify the warranty. She had read Moss's deposition and stated that his recollection was likely accurate. She testified that by nodding her head *1120 affirmatively when Root informed Moss that his home warranty was valid, she simply meant that Root had confirmed the warranty.
¶ 19. The only individual who recalled the events of the closing was Phillip Moss. At the closing, he asked to view his warranty. Root handed him the application. After looking it over, he expressed concern that it was unsigned. At this point, Root stated that she would call and verify that the warranty existed. She and Williams left the room. When they returned, Root informed him that his warranty was valid. Moss stated that Root circled the policy number which had been written on the bottom of the application. According to Moss, Williams nodded her head affirmatively. "Cindy" at the warranty company was the source of the information.
¶ 20. Whether this is enough to show negligence by a gratuitous agent is our question. Who said what during the telephone call itself is unknown. What Cindy said is also unknown, as is what Cindy relied upon to make the statement. "It is elementary law that in any lawsuit based upon negligence, it is incumbent upon the plaintiff to first prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of the accident." Rudd v. Montgomery Elevator Co., 618 So.2d 68, 73 (Miss.1993). In Rudd, the plaintiff alleged that the defendant negligently repaired an elevator some eighteen hours prior to the accident. Id. at 71. Following an inspection a year and a half after the accident, the plaintiff's expert witness concluded that the accident was the result of a misalignment of a roller. Id. at 72-73. The repairman testified that the elevator was working fine following his inspection and that there was no misaligned roller. The court affirmed the verdict in favor of the defendant, finding that "[i]t was incumbent upon [the plaintiff] ... to offer something beyond pure speculation that there was negligence of this nature and that it in fact caused the malfunction." Id.
¶ 21. Similarly, the court has stated that "[w]here plaintiff in a negligence action has only presented proof that the actual cause was one of a number of possibilities, to enable an inference to be drawn that any particular cause is probable, the other causes must be eliminated." Miss. Valley Gas Co. v. Estate of Walker, 725 So.2d 139 (¶ 21) (Miss.1998) (quoting 57A AM. JUR.2d Negligence § 462 (1989) (footnotes omitted)).
¶ 22. Here, no one knows what occurred once Williams and Root left the room. Both testified that they cannot recall the events. Moss was not present when the phone call was made. There has been no showing that Williams and Root were negligent in what either of them stated to "Cindy," or in what they reported back to the closing. The errors could have resulted from negligence on the part of Homebuyer's Warranty Company and its employees. Data regarding the houses with warranties could have been incorrectly entered or incorrectly passed on by Cindy to Williams and Root. In short, Moss failed to address much less eliminate the other possible causes of his injury so as to allow an inference that the actions of Williams and Root were the actual cause.
¶ 23. We agree with the chancellor that there was no evidence that anything Williams did at closing breached any duty that she owed to the Mosses.
¶ 24. Finally, we analyze David Anderson and Lee Hawkins Realty's liability. The chancellor found that Anderson and his employer Lee Hawkins Realty negligently allowed Moss to proceed with the sale without first verifying the accuracy of the warranty. The chancellor noted that "[w]ith their knowledge, training, and expertise as realtors in the area, David Anderson, and Lee Hawkins Realty (who owed a duty to the Plaintiff) could easily have determined for certain the truth or falsity of the existence of a ten year warranty..."
¶ 25. The standard of care of an agent has been described as "a duty to use the degree of diligence and care which a reasonably prudent person would ordinarily exercise in the transaction of his own business...." Lowery v. Guaranty Bank & Trust Co., 592 So.2d 79, 83 (Miss.1991). More specifically, "a business agent represents that he understands the usages of the business in which he is employed. One undertaking *1121 a matter involving special knowledge ordinarily thereby represents that he has the special knowledge required, and undertakes that, so far as it is necessary to keep in touch with events, he will do so." RESTATEMENT OF AGENCY § 10 cmt. c (2d. ed.). The agent Anderson had to exercise the level of care commensurate with his role as the expert to keep his novice principal informed and protected.
¶ 26. Moss was entitled to rely on his agents Anderson and Lee Hawkins Realty to assure that a central term of the sales contract was fulfilled. At least from this record it appears that a significant term was that Moss be provided the remainder of the ten year warranty. Closing arrived and at best the issue was still unresolved. The evidence also supports that no one except Moss himself would have raised the question at closing, even though nothing had been provided indicating that there was a warranty.
¶ 27. The duty owed by Anderson and Lee Hawkins Realty to the Mosses, a duty shaped by their expertise in the real estate business, included determining whether there was a warranty. They failed to exercise the requisite care and skill as fiduciaries for the Mosses. There was one last opportunity at closing and others undertook the task. We have addressed the lack of evidence that anything negligent occurred during that last-minute phone call. Lee Hawkins Realty's negligence was to let matters proceed that far. To rely on oral representations derived from other persons' telephone conversations at that late date is another possible breach of the duty of care. We affirm the chancellor's judgment against Lee Hawkins Realty, Anderson having been dismissed.
¶ 28. The final contention is that any duty owed Moss was released when he questioned the existence of the warranty at the closing. The argument is that Moss, through his words and conduct, assumed the responsibility of ascertaining whether the warranty covered the home. By simply questioning the fact that no one had yet proven that there was a warranty, it cannot be presumed that Moss released his agents from their duty to him. At most the question proved that his agents had failed in their duty; it did not exonerate them from it.
¶ 29. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE ASSESSED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.
HERRING, J., DISSENTS WITHOUT WRITTEN OPINION.