GRIFFIS, J.,
 

 for the court.
 

 ¶ 1. Daniel Alan Brady (“Daniel”) appeals the chancellor’s judgment of divorce. Daniel argues that the chancellor erred by awarding Deborah Brady (“Deborah”) rehabilitative alimony because: (1) Deborah had returned to the workforce in a job that is comparable to her job prior to the marriage, and (2) the alimony will not end until three years following the sale of the marital home. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. Daniel and Deborah were married on July 24, 2004, and separated on February 28, 2005. No children were born of this marriage. On March 24, 2005, Deborah filed her complaint for divorce alleging adultery or, in the alternative, irreconcilable differences.
 

 ¶ 3. Prior to the marriage, Deborah owned a home, which became the marital home, and four acres in Saucier, Mississippi. The property appraised for $225,000 in September 2004. The only debt associated with the home was two years of unpaid property taxes.
 

 ¶ 4. On August 3, 2004, Deborah executed a warranty deed conveying a joint tenancy in the property and home to Daniel in order to secure a home equity loan. Both parties testified that neither was capable
 
 *825
 
 of acquiring a loan individually due to credit problems; she had no income, and he had no collatei’al. In September 2004, Daniel and Deborah mortgaged the marital home for $100,000. In November 2004, the couple mortgaged the marital home for the second time. The total mortgage on the home was $158,000, and the monthly payment was $1,191.53. The couple used the borrowed money to buy four wheelers, a vehicle, horses, a grandfather clock, and exotic birds. They also paid for some home improvements, medical expenses, debts acquired prior to marriage (largely attributable to Daniel), and vacations. By February 2005, all of the borrowed money had been spent.
 

 ¶ 5. In February 2005, Daniel claimed that he was in love with a former girlfriend. Deborah and Daniel both testified that Deborah arranged for the couple to attend marriage counseling and that she begged Daniel to stay. However, Daniel moved to an apartment in Diamondhead, Mississippi and established a relationship with his former girlfriend. Deborah filed for divorce based upon Daniel’s adultery. After Deborah filed for divorce, but prior to trial, the marital home was rendered uninhabitable by Hurricane Katrina.
 

 ¶ 6. The chancellor granted Deborah a divorce based on the ground of adultery. The chancellor distributed the marital assets and ordered the sale of the marital home with the proceeds to be used to pay off any remaining portion of the mortgage. Deborah was awarded any remaining equity in the home, as compensation for the loss, and rehabilitative alimony in the amount of $1,500 per month. The alimony was to begin on November 1, 2007, and terminate thirty-six months after the month the real property was sold.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26(¶ 8) (Miss.2002).
 

 ANALYSIS
 

 1. Whether the chancellor erred by awarding Deborah rehabilitative periodic alimony when she had returned to the workforce in a job that is comparable to her job prior to the marriage.
 

 ¶ 8. Daniel claims that rehabilitative periodic alimony was inappropriate because Deborah has a job that is comparable to her job prior to their marriage. Deborah responds that rehabilitative periodic alimony is necessary because she no longer owns her home debt free and is unable to support herself on her income.
 

 ¶ 9. “ ‘Rehabilitative periodic alimony’ is not intended as an equalizer between the parties but is for the purpose of allowing the less able party to start anew without being destitute in the interim.”
 
 Hubbard v. Hubbard,
 
 656 So.2d 124, 130 (Miss.1995). This Court has affirmed similar awards where the less able party was already employed. In
 
 Wesson v. Wesson,
 
 818 So.2d 1272, 1277-78(¶ 10) (Miss.Ct.App.2002), the wife’s rehabilitative periodic alimony award was affirmed even though she continued to work as a teacher’s assistant. In
 
 Drumright v. Drumright,
 
 812 So.2d 1021, 1028(¶ 24) (Miss.Ct.App.2001), we found that the amount of the husband’s income along with the disparity between the incomes of the husband and wife justified rehabilitative periodic alimony to the wife so that she might “rehabilitate herself in order to maintain the standard of living
 
 *826
 
 sbe has become accustomed to or somewhere near it.”
 

 ¶ 10. Upon our review of the record, we find that the chancellor was presented ample evidence about the couple’s financial status before and after the divorce. Deborah left her full-time job shortly before the marriage. She testified that Daniel wanted a stay-at-home wife, but Daniel testified that he left the decision up to her.
 

 ¶ 11. Following Hurricane Katrina, Deborah moved to San Antonio, Texas. She currently earns $24,000 a year working for a newspaper and estimates her monthly living expenses at $3,148. Daniel earns $83,949 a year working as a safety engineer for NASA and receives $30,000 a year from a military pension.
 

 ¶ 12. Prior to the marriage, Deborah did not have the burden of rent because she owned her home debt free. After her seven-month marriage to Daniel, the home was encumbered by a substantial mortgage. Without rehabilitative periodic alimony, Deborah will become destitute. This is precisely the situation that rehabilitative periodic alimony is designed to protect against.
 

 ¶ 13. “Alimony awards are within the chancellor’s discretion, and we may not reverse unless we find the chancellor committed manifest error in his findings of fact and abused his discretion.”
 
 Graham v. Graham,
 
 767 So.2d 277, 280(¶ 7) (Miss.Ct.App.2000). Daniel has not presented any evidence of the chancellor’s abuse of discretion, and we have not found any. This issue is without merit.
 

 2. Whether the chancellor erred by awarding Deborah rehabilitative alimony for three years following the sale of the marital home.
 

 ¶ 14. Daniel argues that the chancellor erred by conditioning termination of rehabilitative periodic alimony upon the sale of the marital home because rehabilitative alimony is for a fixed period of time, and it is unknown when the house will sell. Deborah argues that the chancellor may terminate rehabilitative periodic alimony upon the occurrence of a specific event.
 

 ¶ 15. “Periodic alimony is for an indefinite period vesting as it comes due and modifiable.
 
 Rehabilitative periodic alimony
 
 is modifiable as well, but is for a fixed period of time vesting as it accrues.”
 
 Lauro v. Lauro,
 
 847 So.2d 843, 849(¶ 15) (Miss.2003) (emphasis added).
 

 ¶ 16. The chancellor awarded Deborah rehabilitative periodic alimony “in the amount of $1,500 per month, to begin [on] November 1, 2007, and [to terminate] 36 months after the month the real property is sold as directed in this judgment.”
 

 ¶ 17. Before we address the merits of the claim, we must address an inconsistency in the chancellor’s opinion. The chancellor provided the parties with an illustration of the termination of the alimony, but in the illustration, the last month of alimony was due six months after the house was sold. Because the chancellor uses thirty-six months multiple times in his opinion, we use it as our fixed time period for consistency in the discussion of this issue. However, we remand for clarification.
 

 ¶ 18. The chancellor’s award was unconventional, but it was not an abuse of discretion. The rehabilitative periodic alimony is not for an indefinite period of time as Daniel suggests. It will terminate thirty-six months after the month that the marital home is sold. Daniel argues that Deborah has no incentive to sell the house and will benefit if the house is not sold, because her rehabilitative periodic alimony will terminate once the house is sold. If Deborah is purposely delaying the sale of the house as Daniel suggests, then he is
 
 *827
 
 free to bring a motion of contempt against Deborah in chancery court. The record indicates that Deborah is paying the real property taxes and insurance on the property.
 

 ¶ 19. The chancellor’s opinion that Daniel profited from his seven-month marriage to Deborah is supported by the record. Daniel left this short marriage without his substantial premarital debt, returned to his previous girlfriend, and threatened to quit his job to avoid paying the mortgage on the marital home. Daniel’s actions left unemployed Deborah without any means to pay the mortgage and, after Hurricane Katrina, homeless with a large amount of debt and no assets.
 

 ¶ 20. We find that Daniel’s assertions of error are without merit, and the chancellor’s award of rehabilitative periodic alimony is affirmed; however, we remand so the chancellor may clarify the number of months which Daniel must pay rehabilitative periodic alimony upon the sale of the marital home.
 

 ¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED AND REMANDED FOR CLARIFICATION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.