LEE, C.J., for the Court:
FACTS AND PROCEDURAL HISTORY
¶ Kimberlye Estes Brown (Kim) and Hickman Scott Brown (Scott) were married on December 6, 2002. They have one child together, and Kim has two children from a previous marriage. Scott left the marital home in Okolona, Mississippi, on December 30, 2009.
¶ On January 6, 2010, Kim filed a petition for child custody and separate maintenance. The parties entered an agreed temporary order addressing marital property and child custody, support, and visitation. Subsequently, Scott filed his answer and counter-petition for child custody and separate maintenance. On April 23, 2010, Scott filed his complaint for divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. The chancellor consolidated the separate maintenance action and the divorce action. On February 2, 2011, Kim filed her counterclaim for divorce on the grounds of desertion and habitual cruel and inhuman treatment.
¶ 3. After numerous hearings on discovery issues, as well as motions for contempt and motions for modification, the case was heard in the Chickasaw County Chancery Court on May 24, 2011, and July 7, 2011. The chancellor found that both parties failed to show by a preponderance of the evidence any credible evidence to meet their burdens of proof and failed to present any corroborating evidence for their respective habitual-cruel-and-inhuman-treatment claims. As for the desertion claim, the chancellor found that although Kim testified that she repeatedly asked Scott to resume the marriage, her actions proved differently. Therefore, the chancellor denied and dismissed both petitions for divorce. After addressing each Albright[1] factor and considering the totality of the circumstances, the chancellor awarded custody of the couple’s child to Kim and granted Scott visitation. The chancellor did not award Kim separate maintenance.
¶ On October 29, 2011, Scott filed a motion to alter or amend the judgment to reflect the previous visitation schedule the parties had agreed to. Kim filed a motion *428 for a new trial on November 3, 2011. Those motions, along with each party’s motions for contempt, were heard on January 19, 2012. The chancellor denied the motion for a new trial and motions for contempt.
¶ Kim appeals, arguing the chancellor erred in (1) denying her a divorce, (2) denying separate maintenance, (3) failing to order a division of the marital assets and debts, and (4) denying her motion for contempt. Kim does not appeal any issue regarding child custody.
STANDARD OF REVIEW
¶ 6. “This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard....” Dupre v. Dupre, 71 So.3d 1226, 1228 (¶ 11) (Miss.Ct.App.2011). However, “[l]egal questions are reviewed de novo.” Id.
DISCUSSION
I. DIVORCE
¶ 7. Kim claims that the chancellor erred in refusing to grant her petition for divorce on the grounds of desertion and habitual cruel and inhuman treatment.

A Desertion

¶8. Mississippi Code Annotated section 93-5-1 (Supp.2013) permits a divorce for “[w]ilful, continued[,] and obstinate desertion for the space of one year.” The party seeking the divorce must establish the ground for divorce, but must not have “provok[ed] the defendant into the acts which constitute the alleged ground[ ] for divorce.” Ammons v. Ammons, 144 Miss. 314, 318, 109 So. 795, 795 (1926). The defendant may defend against a claim of desertion by “set[ting] up any misconduct of [the] plaintiff which justified the separation!.]” Id.
¶ 9. Scott left the marital home on December 30, 2009. Kim filed her counterclaim for divorce on February 2, 2011. Scott never attempted to reconcile, and he never returned to the marriage. In denying the divorce on the ground of desertion, the chancellor found that although Kim had “testified she repeatedly asked [Scott] to resume the marriage, her actions during the pendency of her [c]omplaint for [separate [m]aintenance and the divorce paint[ ] a different picture.”
¶ 10. On January 4, 2010, Kim applied for and was granted a protective order after an incident at Scott’s mother’s home in Louin, Mississippi. The protective order prohibited Scott from contacting Kim in person or by phone unless he was telephoning their son or exchanging him for visitation. The protective order expired on January 14, 2010, and was not renewed. This was not the only incident between Kim and Scott that warranted law-enforcement intervention. In May 2010, according to Kim, Scott arrived at her house and blocked in her car. Scott contends that he was there to exchange their son for visitation, albeit in a different place and time than previously agreed on. Kim called the police. After they arrived, Scott was instructed to leave or he would be arrested for trespassing.
¶ 11. While both parties argue at great lengths about these incidents, both occurred past the statutory period of one year. If the desertion occurred, the year period would have ceased on December 30, 2010.
¶ 12. In the final judgment and opinion, the chancellor addressed the substantial credible evidence presented to defend against the claim of desertion. Scott testi- *429 fled that Kim had put him out of the bedroom in November 2009. He stated that while Kim was working in Oxford, Mississippi, she often stayed at her father’s condominium overnight instead of returning home. And when Kim switched to a job in Columbus, Mississippi, she often left home early in the morning and returned late at night. In Kim’s absence, Scott raised the children and took care of the household duties. Scott testified that taking on these responsibilities caused him great stress, and when he told Kim about it, she screamed at him.
¶ 13. Scott also stated that his marital problems led to depression, for which he sought medical attention. Scott’s mother and brother also testified that he had been depressed and had seen a doctor for treatment. On one occasion, Scott stated that he wanted to take his son to his mother’s house in Louin for Christmas. According to Scott, when he informed Kim of this, she told him that if he took the child, he would be single when he returned.
¶ 14. Kim testified to the contrary, stating that there were no problems in the marriage until Scott left on December 30, 2009.
¶ 15. The chancellor clearly found Scott to be more credible than Kim. The Mississippi Supreme Court has stated numerous times, “A chancellor sits as a fact-finder and[,] in resolving factual disputes, is the sole judge of the credibility of witnesses.” Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). Contrary to the dissent’s approach, this Court “cannot, and will not, reweigh the evidence or reconsider the credibility of the witnesses. The chancellor is in ‘a better position [than] this Court to judge the veracity of witnesses and credibility of evidence.’ ” Hammers v. Hammers, 890 So.2d 944, 951 (¶ 19) (Miss.Ct.App.2004) (quoting Lee v. Lee, 798 So.2d 1284, 1291 (¶29) (Miss. 2001)). While this Court may have considered the evidence differently than the chancellor, nevertheless, we will not reweigh the evidence. Based on our review of the record, the chancellor’s decision was supported by substantial credible evidence. This issue is without merit.

B. Habitual Cruel and Inhuman Treatment

¶ 16. Kim fails to cite any legal authority in support of her argument that the chancellor erred in denying her claim of divorce on the ground of habitual cruel and inhuman treatment. “It is well established that appellate courts in Mississippi will not review any issues on appeal if the party fails to cite relevant authority in support of his or her arguments.” Lambert v. Lambert, 872 So.2d 679, 683 (¶ 14) (Miss.Ct.App.2003). This issue is without merit.
II. SEPARATE MAINTENANCE
¶ 17. Kim contends that the chancellor erred by failing to award separate maintenance. In the final judgment and opinion, the chancellor found that when Kim filed her counterclaim for divorce, she abandoned her claim for separate maintenance. After a hearing on the parties’ respective post-trial motions, the chancellor entered an order altering that finding. The chancellor clarified the record and found that Kim was not entitled to separate maintenance and that she materially contributed to the separation of the parties.
¶ 18. A chancellor may grant separate maintenance to a wife if the “separation [occurred] without fault on the wife’s part” and the husband “willful[ly] abandon[ed]” her and refused to support her. Bridges v. Bridges, 330 So.2d 260, 262 (Miss.1976). As discussed above, from a *430 thorough review of the record, substantial credible evidence was presented that Kim contributed to the separation. This issue is without merit.
III. DIVISION OF MARITAL ESTATE
¶ 19. Kim contends that the chancellor erred in refusing to divide the marital estate. A chancellor has the authority to divide the marital estate after a divorce has been granted. Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). In cases where only separate maintenance has been granted, however, a chancellor does not have the power to award either party a portion of the marital estate. In Daigle v. Daigle, 626 So.2d 140, 146 (Miss.1993), the supreme court stated that separate maintenance “is not a dissolution of a marriage and dividing of marital assets .... ” And the court found that the chancellor erred by dividing the marital assets. Id.
¶ 20. Furthermore, in Thompson v. Thompson, 527 So.2d 617, 622-23 (Miss.1988), the court stated:
The legal duty of the husband to support his wife does not require that he convey any property to her. During cohabitation the wife has the legal right to live in the husband’s home, but he is under no legal duty to convey it to her. And after separation her legal rights are no greater than before.... [T]he court should not, under the guise of enforcing that contractual duty, deprive him of his lands or other specific property, where not necessary for the enforcement of that duty. *443 tort actions concerning Sonat’s mercury metering stations are within the jurisdictional limits of this Court.”
*430 (Citations omitted).
¶ 21. By asking the chancellor to divide the marital assets in the absence of a divorce decree, Kim is asking for her legal rights to be greater than they were before the separation. The chancellor did not have the authority to divide the marital assets, because the claims for divorce had been denied. This issue is without merit.
IV. CONTEMPT
¶ 22. Kim argues that the chancellor erred in denying her motion for contempt, because Scott failed to pay her in accordance with the temporary agreed orders. The chancellor found that when the final judgment was entered denying the divorce, Scott’s financial obligations under the temporary orders stopped.
¶ 23. “[T]he supreme court has held that: ‘contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we.’ ” Keys v. Keys, 930 So.2d 438, 443 (¶18) (Miss.Ct.App.2005) (quoting Morreale v. Morreale, 646 So.2d 1264,1267 (Miss.1994)).
¶ 24. The chancellor was well within her discretion to deny Kim’s motion for contempt. This issue is without merit.
¶ 25. THE JUDGMENT OF THE CHICKASAW COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).