# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00202-COA

**CYNTHIA D. DORRIS**                                                                 **APPELLANT**

**v.**

**MARY GRAVES**                                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/2015 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM L. DUCKER |
| ATTORNEY FOR APPELLEE: | JOSEPH E. FILLINGANE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | DENIED SUIT TO QUIET AND CONFIRM TITLE |
| DISPOSITION: | AFFIRMED: 04/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     After Mary Graves purchased her elderly brother's land at a tax sale, he quitclaimed the property to Cynthia Dorris, his daughter. Cynthia then sued Mary, complaining Mary had obtained the tax deed by leading Cynthia and her father to believe she would pay the taxes on their behalf. Mary claimed that her brother did not want the land and that she had acquired it with his knowledge and consent. The parties were the only two witnesses to testify at the hearing, as their brother/father, Reuben Stringer, was eighty-nine years of age at the time of trial and was unable to testify due to health issues.

¶2.     The chancellor found Mary's account more credible. Because the credibility of

witnesses is entrusted to the chancellor as the finder of fact, we cannot disturb this determination on appeal. We affirm.

## FACTS

¶3.     In 1998, siblings Mary Graves, Reuben Stringer, and Eloise Allen inherited ninety-six acres of land in Lamar County, Mississippi, from their parents. The siblings later divided the property amongst themselves. Reuben moved to Texas and had stopped paying the property taxes on his thirty-three acres by 2004.[1] The events that followed are mostly disputed.

¶4.     Mary testified that in 2005, a family member saw a notice in the newspaper regarding delinquent taxes on Reuben's property. Mary contacted Reuben about it, and he told her he no longer wanted the property and that she should pay the taxes and take it for herself.[2] Mary ultimately redeemed the property on his behalf. In 2008, the taxes again became delinquent, and Mary called Reuben's daughter, Cynthia, to warn her. According to Mary, Cynthia stated that she did not want the property either, and so Mary bought it at the August 25, 2008 tax sale for the cost of the unpaid taxes. She again bought the property at the following two tax sales.

¶5.     In May 2010, the Lamar County tax assessor sent Reuben a final notice stating that he, the property owner, had failed to pay the taxes and that "the title to said land will become

---

[1] Reuben's thirty-three acres span three separate parcels, but for clarity we refer to the land collectively as one thirty-three-acre tract.

[2] A hearsay objection was sustained as to exactly what Reuben told Mary at trial, but her deposition (where she said the same thing) was subsequently entered into evidence without any such objections.

absolute in [Mary] unless redemption from said tax sale be made by 5:00 o'clock p.m. on or before 8/25/2010." Neither Reuben nor Cynthia attempted to redeem the property. On September 16, 2010, Mary received a tax deed.

¶6.     In 2011, Mary decided to sell dirt off the property to recover the money spent at the tax sale. Because she held only a tax sale title, the company planning to purchase the dirt requested she obtain Reuben's permission. Mary claimed that she called Reuben, and he gave her permission to sell the dirt. The dirt removal began.

¶7.     According to Cynthia, the dirt removal alerted her that something was amiss. She had taken over her father's financial affairs in 2010 as his health had declined. But she also claimed knowledge of his prior transactions, and to know what Reuben had told Mary based on the (contested) claim that Reuben did not have a telephone; he used hers, so she was present during his calls with Mary. Cynthia denied that Reuben had ever told Mary she could have the land if she paid the taxes. She also claimed Reuben did not see the final notice of the end of the redemption period because it was intercepted and discarded by his grandson, who lived with him, but the issue of whether proper notice was given is not raised on appeal.

¶8.     Cynthia testified that she talked to Mary in 2007 or 2008, and had offered to come to Mississippi and pay the taxes. Mary had responded that it was not necessary for Cynthia to travel from Texas; Mary would pay the taxes and Cynthia or Reuben would pay her back later. Cynthia claimed Reuben had previously reimbursed Mary for some of the taxes she had paid.

3

¶9. In January 2013, Mary attempted to sell two acres of the property to a friend. She was informed by an attorney that she could not sell the property since title had never been confirmed. Mary called Cynthia and asked her to have Reuben execute a quitclaim deed to Mary. According to Mary, Cynthia agreed.

¶10. But Cynthia did not have Reuben execute a quitclaim deed to Mary. Instead, she prepared her own quitclaim deed transferring title to herself, which she claimed Reuben executed because he was physically unable to prosecute a lawsuit to recover the property. On March 28, 2014, Cynthia filed a complaint against Mary in the Lamar County Chancery Court to quiet and confirm title in herself based on the quitclaim deed. Cynthia alleged that Mary had obtained the tax deed by trickery, and she sought to have the tax deed set aside. Mary answered and denied all such allegations, but she did not counterclaim or assert any affirmative defenses.

¶11. On January 7, 2015, the chancellor entered a final judgment, finding that based on the evidence presented, Cynthia was not entitled to the requested relief.

¶12. Cynthia appeals, arguing that the tax deed should be set aside: (1) through the principle of equitable estoppel; (2) because there was a gratuitous agency relationship through which Cynthia and Reuben relied on Mary to pay the taxes on their behalf; (3) for failure to comply with the adverse possession requirements of Mississippi Code Annotated section 15-1-15 (Rev. 2012); and (4) because Mary's testimony was not credible. We find no merit to these issues.

**STANDARD OF REVIEW**

¶13. Our review of a chancellor's factual findings is limited. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000). If supported by substantial credible evidence, the chancellor's factual findings will not be disturbed "unless [this Court] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or applied an erroneous legal standard." *Lane v. Lampkin*, 175 So. 3d 1222, 1227 (¶6) (Miss. 2015). On the other hand, questions of law are reviewed de novo. *Id.*

**DISCUSSION**

**1. Equitable Estoppel**

¶14. Cynthia argues the chancellor should have nullified Mary's tax deed and confirmed and quieted title in Cynthia's name under the principle of equitable estoppel. Equitable estoppel precludes a party "from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed." *Kimball Glassco Residential Ctr. Inc. v. Shanks*, 64 So. 3d 941, 947 (¶19) (Miss. 2011). "Equitable estoppel is an extraordinary remedy" that "should be applied cautiously and only when equity clearly requires it." *B.C. Rogers Poultry Inc. v. Wedgeworth*, 911 So. 2d 483, 491 (¶26) (Miss. 2005). It should only be used in cases where "it would be substantially unfair to allow a party to deny what he has previously induced another to believe and take action on." *PMZ*

5

*Oil Co. v. Lucroy*, 449 So. 2d 201, 207 (Miss. 1984).

¶15.    For Cynthia to prove she is entitled to relief under the principle of equitable estoppel, she must show she (1) "changed her position in reliance upon [Mary's] conduct" and (2) "suffered detriment caused by this change of position in reliance upon such conduct." *Turner v. Terry*, 799 So. 2d 25, 37 (¶42) (Miss. 2001).  Cynthia argues Mary's course of conduct induced her and Rueben not to pay the taxes.  She asserts that because of her reliance on Mary, they (1) changed their position because they would have otherwise paid the taxes, and (2) suffered detriment by losing ownership of the property for far less than it was worth.

¶16.    Conflicting testimony was presented as to whether Mary agreed to pay the property taxes on Reuben's behalf or acted in a way that made Cynthia and Reuben believe she would. Mary claimed to be acting according to Reuben's wishes when she took title to the land through a tax sale.  Cynthia denies this, and she instead asserts that it was Reuben's intention to retain the property.  To support her position, she testified that Reuben had previously reimbursed Mary for paying the property taxes.  However, she offered no documentary proof of this, and Mary denied receiving checks from Reuben.

¶17.    While Mary conceded Cynthia had once inquired as to the amount of the taxes and when they were due, the remainder of this conversation was disputed.  Mary testified that she just told Cynthia she could not know the amount of the taxes until they became due.  Cynthia never again asked about it, and she subsequently disclaimed interest in the property. Cynthia, on the other hand, claimed instead that she had offered to come to Mississippi and pay the

6

taxes, but Mary said she would pay them to save Cynthia the trip.

¶18. Whether Cynthia and Reuben were induced by Mary to change their position – that is, to not pay the taxes they otherwise would have paid – is a question of fact. The chancellor, not this Court, "sits as a fact-finder in resolving factual disputes, and is the sole judge of the credibility of witnesses." *Lowrey v. Lowrey*, 25 So. 3d 274, 297 (¶59) (Miss. 2009). We do not redetermine questions of fact. *Id.* And we may not disturb a chancellor's findings if they are supported by substantial credible evidence. *Id.*

¶19. The chancellor found Mary's testimony more credible, and we cannot find that to be an abuse of discretion. This issue is without merit.

### 2. Gratuitous Agency

¶20. Cynthia next argues that Mary had entered into a gratuitous agency relationship with Reuben by paying the taxes on his property for him. Cynthia does not explain why this entitles her to title to the property; the cases she cites are tort cases involving negligence of the agent and money damages. *See Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359 (Miss. 1992); *Lee Hawkins Realty Inc. v. Moss*, 724 So. 2d 1116 (Miss. Ct. App. 1998).

¶21. At any rate, Cynthia failed to even establish the existence of an agency relationship. "A gratuitous [agency] relationship arises when an individual makes a promise or engages in other conduct which (1) 'he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent,' and, (2) 'which causes the other to refrain from having such acts done by other available means.'" *Lee Hawkins*

7

*Realty*, 724 So. 2d at 1119 (¶16) (quoting Restatement of Agency § 378 (1957)). Cynthia contends that she and Reuben relied on Mary, which caused them to refrain from paying the property taxes. She suffered detriment because she ultimately lost the property through the tax sale.

¶22.    But this argument is based almost entirely on disputed facts. While Cynthia claims Mary led her and Reuben to believe she would pay the taxes on Reuben's behalf, Mary denies this, instead asserting that Cynthia and Reuben stated they had no interest in the property and were content with Mary purchasing it at the tax sale. Cynthia also asserts that Mary's testimony that she sought permission from Reuben to sell dirt in 2011 was an acknowledgment of Reuben's interest in the property and a continuance of the agency relationship, but this was hardly the only conclusion that could be drawn from the request given the notorious unreliability of tax deeds.

¶23.    As stated in *Corson*, this Court "does not sit to redetermine questions of fact." *Corson*, 612 So. 2d at 367. "When substantial evidence supports the findings of the [c]hancellor we will not disturb his conclusions, notwithstanding that we might have found otherwise as an original matter." *Id.* "Unless the [c]hancellor's determination of fact is manifestly wrong, [the appellate court] will uphold his decision." *Id.* The chancellor resolved the factual dispute in Mary's favor, and we find no abuse of discretion in her doing so. Substantial credible evidence was presented through Mary's testimony to support the chancellor's finding. Cynthia failed to prove an agency relationship was created. This issue

8

is without merit.

### 3. Tax Deed

¶24. Cynthia next argues that the chancellor should have cancelled and held the tax deed for naught because Mary cannot meet the requirements of section 15-1-15, which sets out the elements for adverse possession after a tax sale.

¶25. But this issue is irrelevant in the case before this Court. Mary did not countersue to confirm title by adverse possession under the statute, nor did she raise adverse possession as a defense. The issue of the validity of Mary's tax title was not addressed by the chancellor, except to the extent that the chancellor suggested that Mary could have filed a cross-claim to quiet and confirm title, but that her failure to do so did not nullify her claim of ownership pursuant to the tax deed.

¶26. This contention is without merit.

### 4. Weight of the Evidence

¶27. Finally, Cynthia argues title should have been confirmed in her name because "there were too many holes and contradictions" in Mary's testimony for the chancellor to reject Cynthia's claim. She argues the chancellor may have been swayed out of sympathy for Mary's "age and demeanor."

¶28. As examples of inconsistencies, Cynthia cites to Mary's testimony as to how many checks she received when she sold dirt off the property – two or six – and the amount of money she made from the sale of the dirt – whether it was just enough to cover the taxes or

9

a $7,000 profit. Cynthia also cites to testimony about Mary's attempt to sell two acres of the land to a friend. Although Cynthia does not reference a specific inconsistency regarding this testimony, she asserts Mary's "actions and the time of filing of documents speak for themselves" and put Mary's veracity into question because of her "egregious mistake" in attempting to sell land for which she did not have clear title.

¶29. This is just another attempt to relitigate the chancellor's credibility determinations. Again, "[a] chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility." *In re Estate of Carter*, 912 So. 2d 138, 143 (¶18) (Miss. 2005). And "since the chancellor is best able to determine the credibility of the witnesses' testimony, it is not [the appellate court's] province to undermine the chancellor's authority by replacing the chancellor's judgment with [its] own." *Id.*

¶30. After reviewing the record, we cannot say the chancellor's factual findings were manifestly wrong or clearly erroneous. Thus, Cynthia's argument is without merit. The chancellor's decision is affirmed.

¶31. **THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**