## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00714-COA

**PATRICIA THORNHILL**                                                    **APPELLANT**

**v.**

**GARY MASON THORNHILL**                                                **APPELLEE**

DATE OF JUDGMENT:             01/03/2023
TRIAL JUDGE:                  HON. DEBORAH J. GAMBRELL
COURT FROM WHICH APPEALED:    LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       MAURA DELANEY McLAUGHLIN
ATTORNEY FOR APPELLEE:        ALLEN FLOWERS
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 09/23/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Patricia and Gary Thornhill were married in 2002. The couple separated in May 2017, and Patricia filed for divorce. In Patricia's complaint, she requested a divorce on the ground of adultery or, in the alternative, irreconcilable differences. In Gary's answer and counter-claim, he asserted that the divorce should be granted on the grounds of desertion, habitual cruel and inhuman treatment, or, in the alternative, irreconcilable differences. In the midst of these proceedings, Gary filed for bankruptcy. After Patricia presented her case, the chancellor dismissed her claim for an adultery-based divorce. Both parties then decided that they would proceed on the ground of irreconcilable differences and would provide the chancellor with a settlement agreement, but Patricia later recanted. As a result, Gary presented his case for desertion, and the chancellor granted the divorce on this ground.

Patricia filed a motion for a new trial, which was denied following a hearing. Aggrieved, Patricia appeals. For the reasons stated below, this Court affirms the chancellor's judgment.

## FACTUAL AND PROCEDURAL HISTORY

¶2. In 2002, Patricia and Gary were married in Marion County, Mississippi. Two children were born of the marriage, but only one ("JST") was a minor at the time of these proceedings.[1] Patricia and Gary separated on approximately May 10, 2017, when Patricia moved out of their marital home. On May 22, 2017, Patricia filed for divorce in the Lamar County Chancery Court on the ground of adultery or, in the alternative, irreconcilable differences. On June 16, 2017, Gary filed an answer and counter-claim for divorce on the grounds of "abandonment, cruel and habitual treatment," or, in the alternative, irreconcilable differences.

¶3. On November 7, 2017, Gary filed a suggestion of bankruptcy, requesting a stay of the divorce proceedings due to his then-pending Chapter 13 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Mississippi. On the same date, the court conducted a hearing "on temporary features arising" out of the pending divorce. On March 12, 2018, the chancery court entered a temporary order regarding custody arrangements for JST and requiring that Gary provide spousal support to Patricia in the amount of $250.00 per month. The order further stated that Patricia would have "temporary and exclusive use" of the Ford F-150 truck as additional spousal support. The chancellor concluded by noting that

---

[1] On July 1, 2021, Patricia and Gary filed a joint stipulation stating that Gary would have physical custody of JST and that both parties would share joint legal custody. Because neither party disputes the final custody arrangement, those portions of information and history, i.e., filings regarding a guardian ad litem, are omitted from this opinion for brevity.

"because Gary has filed Chapter 13 Bankruptcy[,] the [c]ourt is not able to address any other issues at this time." On May 10, 2019, the bankruptcy court entered an order lifting the automatic stay to allow the chancery court to proceed with this action.

¶4. On October 31, 2019, Gary filed a motion for a continuance, explaining he "had extreme difficulty in obtaining new [c]ounsel in this [c]ourt because of Gary's complex Chapter 13 proceeding" and requesting that his newly retained counsel be given more time to "make the matter triable." On February 20, 2020, Patricia filed a petition alleging Gary was in contempt of court for violating the court's temporary order because of his late, inconsistent payments and outstanding balance owed to Patricia. On July 15, 2020, Gary filed an answer to the petition for contempt and an amended counter-claim alleging adultery as another ground for divorce. Additionally, he filed a motion to compel Patricia to supply her responses to discovery. On March 22, 2021, the parties entered an agreed order scheduling a pre-trial conference for April 9, 2021, and a trial on the merits for June 29, 2021.

¶5. On March 17, 2021, the chancery court held a hearing on Gary's motion to compel. Three days later, the court entered an order mandating that Patricia supply her discovery responses by April 1, 2021, and reserving Gary's requests for sanctions and fees for the trial on the merits. Gary filed a motion to show cause on May 14, 2021, asserting that Patricia's discovery responses were "grossly incomplete and deficient[.]" On May 18, 2021, the court held a hearing on Gary's motion to show cause. The chancellor asked Patricia specific questions on the record in order to complete the discovery process. On August 19, 2021,

3

Patricia filed a second petition for contempt, alleging that Gary failed to make his required payments to her. Gary responded to the petition the following day, citing insufficient process and alleging that Patricia failed to state a claim and "c[a]me[] into this [c]ourt with unclean hands and thus is entitled to no relief whatsoever from Gary."

¶6.     The chancery court bifurcated the trial to consider the grounds of divorce before proceeding. The bifurcated trial began on August 24, 2021, and Patricia was permitted to call witnesses as she put on her case for fault-based divorce. The court heard testimony from Gary's longtime friend Debra Green, who was questioned about the nature of her relationship with Gary.[2] Debra repeatedly stated that she and Gary were only friends. Gary was also questioned, testifying that he had not been in an intimate relationship with Debra or the other women he was asked about during his marriage to Patricia. Gary denied ever having any physical altercations with Patricia. Patricia also personally testified, stating that she and Gary separated in May 2017 "[b]ecause [she] had found out about Debra Green." Patricia alleged that Gary had been in inappropriate relationships with multiple women during their marriage and following their separation. She also offered vague screenshots of various messages and photographs as evidence supporting her case for adultery.

¶7.     At the end of the first day of trial, Gary moved for dismissal of Patricia's claims pursuant to Rule 41 of the Mississippi Rules of Civil Procedure. The chancellor granted the motion, finding that Patricia "failed to carry her burden of proof" concerning her claim of

---

[2] Patricia also subpoenaed Sandra Stringer, another friend of Gary's with whom she alleged he was currently in a relationship, but Sandra was unable to attend the trial due to contracting COVID-19.

adultery. Attorneys for both Gary and Patricia informed the chancellor that they had proposed a divorce on the ground of irreconcilable differences to both parties, and Patricia was opposed to it because of her request for alimony. The chancellor referenced the *Armstrong* factors, noting that Patricia's chances for an award of alimony were "highly unlikely."[3] Following a discussion between the chancellor and both parties, Gary and Patricia agreed to withdraw their fault-based grounds and proceed with a divorce claim based on irreconcilable differences.

¶8.     At some point between August 24 and September 2, 2021, however, Patricia "recanted her agreement to resolve the matter" based on irreconcilable differences, "refused to sign the settlement documents[,]" and signaled a desire to proceed on fault-based grounds. Patricia's attorney subsequently filed a motion to withdraw from the case on September 2, 2021. Gary filed a response in opposition to the motion to withdraw on September 8, 2021. On the same date, Gary also filed a motion to resume the trial or, in the alternative, to expedite setting a trial date. On August 29, 2022, the court held a hearing on the motion to withdraw and the motion to resume the trial. On September 6, 2022, the court entered an order permitting Patricia's counsel to withdraw from the matter and setting a full trial on the merits for December 13, 2022. Patricia did not obtain new representation until December 2 and, as a result, moved for a continuance on December 8, 2022. The court denied the motion, so Patricia proceeded pro se.

¶9.     On December 13, 2022, at the beginning of the second half of trial, the chancellor

---

[3] *See Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

entered an order of partial dismissal of Patricia's claims—namely, her case for divorce on the ground of adultery and subsequent request for leave to file an amended complaint. The order stated that "[b]efore Gary presented testimony on his grounds for contested divorce," both Gary and Patricia requested that the chancellor "grant unto them a divorce on the grounds of irreconcilable differences." The court's order also granted Gary's motion to dismiss Patricia's claims for alimony; however, later that day, the order was amended to state that "[a]fter a full hearing on the support issue and property division, this [c]ourt will enter [its] final order[.]"

¶10. Gary then proceeded with his case for a fault-based divorce based on desertion, beginning with calling Patricia as an adverse witness. Particularly, the following exchange took place between Gary's attorney and Patricia:

**Q:** Now, your testimony also was that you left Gary on May 10 of 2017, is that correct?

**A:** It was May the 9th.

**Q:** May the 9th. But you left the house?

**A:** **I did leave the house**.

**Q:** Okay. And after that, Gary tried to contact you numerous times, did he not?

**A:** No, sir.

**Q:** He didn't?

**A:** No, sir. Not at all.

**Q:** Tell the [c]ourt what efforts you made to contact Gary after you left.

6

**A:** **I didn't make any efforts to contact him**. I left a letter on the bar in the kitchen for him whenever he got home.

**Q:** So you are saying no phone calls from Gary?

**A:** Absolutely.

**Q:** But you didn't make any phone calls to him?

**A:** No, sir.

**Q:** Once you left there, did you refuse to go back?

**A:** I was never asked to go back.

**Q:** Did you make any effort to go back?

**A:** **I didn't want to go back**.

**Q:** If Gary had called you and said, please come back, what would you have said?

**A:** I would have said, We have already been down this road twice before and third's the charm, **I'm not coming back**.

**Q:** So when you left, you were done?

**A:** That's correct.

**Q:** So you were willfully leaving the marriage and you were not coming back?

**A:** **I was not**. No, sir, **I was not coming back** due to the circumstances that my marriage was in, that I've tried to talk to him about and he had no consideration over. No, sir.

(Emphasis added).

¶11. Gary also provided testimony at trial stating that he was unaware of any reason for Patricia's departure in May 2017 and that he tried to call her approximately ten times

7

afterward. Gary hoped to "find out what we . . . could do to resolve and save our marriage" and alleged that he wanted Patricia to come home. Additionally, he testified that Patricia had taken all her belongings (and some of JST's) and left JST behind with Gary. Gary also called his sister Phyllis Joan Kyle to testify. She stated that she and Gary were "extremely close," and she was "shocked" when Patricia allegedly left the marriage.[4] At the conclusion of Gary's case, the chancellor granted Gary a divorce on the ground of desertion and, thus, proceeded to a discussion of the parties' equitable distribution. Patricia indicated that while she was interested in receiving certain property, she did not want to receive the debt associated with it.

¶12. On January 3, 2023, the chancery court entered its final judgment of divorce. Gary was granted a divorce "on the grounds of willful, continued and obstinate desertion for the space of one year by Patricia" because she "admitted abandoning the marriage and the homestead" and never returned or made an attempt to return. The parties' joint stipulation concerning the custody of JST was acknowledged, and the chancellor required Patricia to pay Gary $160.00 each month in child support.

¶13. The chancellor also "conducted an exhaustive analysis of the tremendous amount of marital debt owed by the parties, much of which encumbers the former homestead property, related real property, and automobiles." Aside from two properties and an IRA account that Patricia inherited, which were determined to be her own separate property, all other property was deemed marital property. A large portion of the marital property was encumbered by

---

[4] Phyllis also testified that Patricia left a notice of foreclosure in an inconspicuous place for Gary to find.

8

marital debts "such that there [wa]s no appreciable equity in any" of it. The marital debts were split equally between Gary and Patricia, and the chancellor separated the remaining property.

¶14. The judgment noted that Gary had been paying, through his Chapter 13 plan, temporary alimony in the amount of $250.00 a month in accordance with the court's temporary order. This alimony (also referred to as spousal support) award would be terminated on January 1, 2023. As for any permanent alimony award, the chancellor provided the following:

> [B]oth parties are 60 years old. Patricia was employed before the marriage, then was a stay-at-home wife/mother during the marriage. Patricia testified she now makes about the same income now from babysitting as she did from being a waitress at the time of marriage. . . . [A]ll marital property is encumbered with substantial marital debt, for which Gary shall remain responsible. . . . **Having considered all of the relevant *Armstrong* factors, the [c]ourt finds that Gary shall pay Patricia rehabilitative alimony of $250.00/month for 36 months, beginning January 5, 2023**. . . . [T]his rehabilitative award will not be paid through Gary's Chapter 13 Plan.
>
> . . . .
>
> **Patricia owes Gary . . . for half of the marital tax debt**[.] Gary owes Patricia rehabilitative alimony totaling $9,000.00 (36 months @ $250.00). Subtracting that $9,000.00 from the $17,171 tax debt that Patricia owes Gary leaves a deficit owed by Patricia to Gary of $8,455.00. In light of Patricia's modest income, Patricia is encouraged to pay Gary this sum expeditiously.
>
> To avoid future litigation should Patricia not pay this sum, Gary is hereby awarded a money judgment against Patricia in the sum of $8,455.00. . . .[5] To be clear, this workout eliminates any need for Gary to make any payments to Patricia, for domestic support obligation, alimony or anything else in Gary's Chapter 13 Plan . . . . **This offset means that Gary's rehabilitative alimony**

---

[5] Also included in Gary's "money judgment" of $8,455.00 was the $284.00 transcript fee from the trial.

9

**obligation to Patricia is paid in full.**

(Emphasis added). In addition, the chancellor found that "Patricia's refusal to consummate the settlement [agreement] was not in good faith," and, accordingly, she was ordered to pay "one-half of Gary's post-August 24, 2021, attorney's fees[.]"

¶15. Summarily, Patricia was left with her two separately owned properties totaling $270,000.00 and her inherited IRA account totaling approximately $72,000.00, neither of which was encumbered by debt, and one vehicle worth $20,650.00. Gary was left with "real and personal property valued at approximately $364,057.00, upon which there was at least $358,102.00 in fixed debt[.]"

¶16. Patricia filed a motion for a new trial on January 13, 2023, largely alleging that she "should not have been forced to proceed pro se by the [c]ourt." On January 17, 2023, Gary filed a response in opposition to that motion. The chancery court held a hearing on April 25, 2023, concerning Patricia's motion. Patricia's attorney argued that Patricia was "forced to proceed pro se" at the earlier trial and was "unaware of some of the issues that she was able to raise at that time." In turn, counsel for Gary asserted there was "absolutely no basis for . . . the assertion that [Patricia] being required to go forward at trial pro se[] was a surprise or was unfair" because Patricia had fired her own lawyer and had been given a hard deadline of three months to obtain new representation. The parties also discussed the error in the final judgment regarding the couple's date of separation, and the chancellor declared that such an error was clearly a scrivener's error and would be corrected. At the conclusion of the hearing, the chancellor denied Patricia's motion for a new trial.

10

¶17. On May 22, 2023, the chancery court entered an order "dismissing" Patricia's motion for a new trial. The order was corrected on May 30, 2023, to reflect that the order was denying, not dismissing, Patricia's motion for a new trial and that Gary's counsel should prepare a proposed corrected order that "does not affect the finality of the final judgment," which counsel opposite later approved. On June 26, 2023, Patricia filed a notice of appeal of "all" orders and final judgments entered by the chancery court.[6] On July 17, 2023, the chancery court entered the judgment correcting the scrivener's error nunc pro tunc to the January 3, 2023 final judgment.

## STANDARD OF REVIEW

¶18. "In domestic relations cases, we employ a limited standard of review." *Picard v. Picard*, 85 So. 3d 340, 343 (¶9) (Miss. Ct. App. 2012) (citing *Carrow v. Carrow*, 741 So. 2d 200, 202 (¶9) (Miss. 1999)). Specifically, "we will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id.*

## DISCUSSION

¶19. On appeal, Patricia raises three issues: (1) the court erred by awarding the divorce on the ground of desertion; (2) the court erred in its calculation of marital debt, assets, and equitable distribution, as well as Patricia's separate property; and (3) the court erred by not

---

[6] On June 27, 2023, Patricia filed a motion in the chancery court to strike its order of dismissal and to substitute it in the record with the order denying the motion for a new trial. Gary filed an answer in opposition to that motion two days later. Our record on appeal does not reflect that the chancellor entered a separate order ruling on the matter after the notice of appeal was filed and the corrected final judgment was entered nunc pro tunc.

granting Patricia periodic alimony.

¶20.   We first address Gary's contention that Patricia is procedurally barred from arguing these issues before this Court because she did not raise them in her Rule 59 motion for a new trial.  The appellate courts of this state have long held that "issues not raised below may not be raised on appeal."  *Walker v. Hasty*, 395 So. 3d 424, 435-36 (¶32) (Miss. Ct. App. 2024) (quoting *Harrison v. Howard*, 356 So. 3d 1232, 1246 (¶45) (Miss. Ct. App. 2023)).  Indeed, "[b]efore an issue may be assigned and argued in this Court, it must first be **presented to the trial court**."  *Id.* (emphasis added).  However, while "it is clearly the better practice to include all potential assignments of error in a motion for new trial[,] when the assignment of error is based on an issue that has been decided by the trial court and duly recorded in the court reporter's transcript," this Court may consider the issue "regardless of whether it was raised in the motion for new trial."  *Baumbach v. Baumbach*, 242 So. 3d 193, 199 (¶20) (Miss. Ct. App. 2018) (quoting *Kiddy v. Lipscomb*, 628 So. 2d 1355, 1359 (Miss. 1993)); *see also Jackson v. State*, 423 So. 2d 129, 131 (Miss. 1982) (stating "it is not necessary to make a motion for a new trial grounded upon errors shown in the official transcript of the record, including the pleadings, transcribed evidence, instructions, verdict and judgment of the court") (citing *Colson v. Sims*, 220 So. 2d 345, 346 n.1 (Miss. 1969)).

### I.     Desertion

¶21.   Patricia first argues that the chancellor erred by granting a divorce on the ground of desertion.  Mississippi Code Annotated section 93-5-1 (Rev. 2013) permits a divorce for "[w]illful, continued and obstinate desertion for the space of one (1) year."  *See also Brown*

*v. Brown*, 142 So. 3d 425, 428 (Miss. Ct. App. 2013). "The party seeking the divorce must establish the ground for divorce, but must not have provoked the defendant into the acts which constitute the alleged ground for divorce." *Id.* (quotation mark omitted) (quoting *Ammons v. Ammons*, 144 Miss. 314, 318, 109 So. 795 (1926)). "The defendant may defend against a claim of desertion by setting up any misconduct of the plaintiff which justified the separation." *Id.* (quotation mark omitted).

¶22. Patricia contends that it was Gary's misconduct that led to the separation "[b]ecause [she] had found out about Debra Green" and, additionally, that "Gary threw her to the ground before she left[.]" She further states that she "left him a note telling him that she was going to her mother's house[,]" and Gary "never asked her to return home[.]" The chancellor heard all these contentions from Patricia at trial. The chancellor also heard Gary's testimony that he had never hit Patricia, had never grabbed her or pushed her, and had never thrown anything at her. Gary stated that he had no knowledge of any sort of domestic violence charges ever pressed on either party.

¶23. "If supported by substantial credible evidence, the chancellor's factual findings will not be disturbed unless this Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Dorris v. Graves*, 189 So. 3d 1233, 1235-36 (¶13) (Miss. Ct. App. 2016) (quotation mark omitted) (quoting *Lane v. Lampkin*, 175 So. 3d 1222, 1227 (¶6) (Miss. 2015)). The chancellor evidently was not persuaded by Patricia's abuse allegations. At the conclusion of testimony, the chancellor stated the following:

Under the law, proceeding on willful continued obstinate desertion for a period of more than one year, I think the first ten sentences that were elicited adversely from [Patricia] verifies that **she made no effort to return back**, that **she didn't want to go back**. **She was not going down this road again**. That if Gary had asked her, **she was not coming back**. Based upon what the law says in this state, [Gary] is entitled to a divorce on the grounds of willful continued obstinate desertion.

(Emphasis added).

¶24. In keeping with this statement, the chancellor's final judgment of divorce was extremely straightforward regarding the desertion issue. The chancellor's order granted a divorce based on desertion and Patricia "admitt[ing] abandoning the marriage and the homestead on or about May 9, 2017," and not returning. Further, the chancellor found that Patricia had not "attempted to return to the marriage or the homestead since trial began on August 24, 2021." Patricia testified that she "didn't want to go back" and that even if Gary had called her to ask her to come home, she "would have said, [']We have already been down this road twice before and third's the charm, I'm not coming back.[']"

¶25. The chancellor's findings were "supported by substantial credible evidence" documented in the record. *See Dorris*, 189 So. 3d at 1235-36 (¶13) (quoting *Lane*, 175 So. 3d at 1227 (¶6)). Moreover, the chancellor's findings clearly established the elements of desertion: "willful, continued and obstinate desertion for the space of one (1) year." Miss. Code Ann. § 93-5-1; *see also Brown*, 142 So. 3d at 428. We find no manifest error or application of an erroneous legal standard. Therefore, this argument fails.

## II.      Property Distribution

¶26. Patricia classifies the next issue on appeal as the chancellor's erroneous "calculation

14

of marital debt, assets and equitable distribution, as well incorrectly calculating Patricia's separate property." This portion of the brief's argument is approximately two pages in length. Patricia's brief essentially cites a case setting forth the three-step process of determining which assets are to be equitably divided, which requires classifying marital assets, valuing those assets, and then dividing the assets equitably.[7] *Poisso v. Poisso*, 300 So. 3d 1067, 1074 (¶24) (Miss. Ct. App. 2020) (citing *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶12) (Miss. 2015)). After that, Patricia's brief lists some property values but never states how the chancellor erred in conducting the three-step process. Patricia presents essentially the same argument regarding the *Ferguson* factors.[8] She lists the *Ferguson* factors but does not offer any argument as to which factor the chancellor erred in analyzing nor does it provide any caselaw or other legal support on how the chancellor erred. It simply lists the factors.

¶27. Mississippi Rule of Appellate Procedure Rule 28(a)(7) states that "[t]he argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). "[T]he rule does not simply require a party to mention authority; the authority must be used to **develop the argument in a meaningful way**." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016) (emphasis added) (quoting *Archer v. State*,

---

[7] Patricia's reference to this case does not include an actual citation or any analysis of the case. It simply states, "[i]n *Poisso* . . . ."

[8] *See Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). The cite to *Ferguson* does not include a pincite or any analysis. It simply states "in order to equitable distribute property, the chancery court applies the *Ferguson* Factors[.]"

15

118 So. 3d 612, 621 (¶29) (Miss. Ct. App. 2012)). "Arguments that do not comply" with Rule 28 are, in turn, "procedurally barred." *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017) (citing *Cowart v. State*, 178 So. 3d 651, 666 (¶39) (Miss. 2015)).

¶28.    In *Reading v. Reading*, 350 So. 3d 1195 (Miss. Ct. App. 2022), the appellant failed to make meaningful arguments in his brief and cited only to the Fourteenth Amendment without any other explanations or citations as to how the court erred under our law. *Id.* at 1200 (¶21). This Court reiterated the supreme court's holding in *Patton* stating, "Issues cannot be decided based on assertions from the briefs alone." *Id.* at (¶22) (quoting *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012)). Indeed, "[t]he issues must be supported and proved by the record." *Id.* "The appellant must support his argument with reasons and authorities," as this "is part of an appellant's burden on appeal." *Id.* (emphasis omitted). Further, "in the absence of meaningful argument and citation of authority, appellate courts generally will not consider the assignment of error." *Id.* (emphasis omitted); *see also Siggers v. State*, 342 So. 3d 1213, 1218 (¶16) (Miss. Ct. App. 2022) (quoting *Stewart v. State*, 291 So. 3d 738, 748 (¶39) (Miss. 2020)).

¶29.    In another case named *Hill v. State*, 940 So. 2d 972, 973-74 (¶5) (Miss. Ct. App. 2006), this Court found that an appellant failed to sufficiently brief his arguments because he provided only a "summary of his arguments" and did not "elaborate on his point." The appellant only listed issues, such as "[t]he defendant was denied due process of law by the court" and the court erred by "not introducing evidence[.]" *Id.* at 973 (¶5). This Court opined that the "argument [wa]s insufficient because [the appellant] did not include an

16

argument in his brief." *Id.* at 973-74 (¶5). Although the appellant's brief "cite[d] five cases," he failed to "cite any one case for any particular argument or proposition." *Id.* at 974 (¶8). Further, none of the cases were relevant to any of the arguments. *Id.* This Court therefore concluded that the appellant failed to comply with Rule 28(a) of the Mississippi Rules of Appellate Procedure and denied the appeal.[9] *Id.* at (¶¶8, 11).

¶30. Here, Patricia failed to cite any authority. She failed to explain or offer any argument as to how the chancery court erred in the property evaluation or equitable distribution. Patricia simply listed the classification steps followed by the *Ferguson* factors. Not one single argument was made explaining how or why the chancellor erred. Not one single case or legal authority was offered as support for how or why the chancellor erred in her analysis. Patricia simply cited factors. That hardly constitutes a "meaningful argument." Simply citing the *Ferguson* factors is hardly using "the authority" to "**develop the argument in a meaningful way**." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016) (emphasis added) (quoting *Archer*, 118 So. 3d at 621 (¶29)). Therefore, we find this issue barred for failure to comply with Rule 28(a)(7) of the Mississippi Rules of Appellate Procedure and the caselaw interpreting it. *See Hill*, 215 So. 3d at 524 (¶10); *Siggers*, 342 So. 3d at 1218 (¶16); *Stewart*, 291 So. 3d at 748 (¶39); *Reading*, 350 So. 3d at 1200-01 (¶24).

### III. Alimony

¶31. Finally, Patricia asserts that the chancellor erred by granting her rehabilitative alimony, not periodic alimony. In determining whether alimony is appropriate, chancellors

---

[9] The Mississippi Rules of Appellate Procedure were updated in 2016; Rule 28(a)(6) is now Rule 28(a)(7).

must utilize the *Armstrong* factors:

1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Stacy v. Stacy*, 393 So. 3d 1133, 1139-40 (¶18) (Miss. Ct. App. 2024) (citing *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)). From there, "[t]he award of alimony is within the **sound discretion** of the chancellor." *White v. White*, 913 So. 2d 323, 325 (¶11) (Miss. Ct. App. 2005) (emphasis added) (citing *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992)).

¶32. The chancellor indicated in her January 2023 final judgment that she performed the *Armstrong* analysis, leading to her decision to grant Patricia rehabilitative alimony. She summed up that analysis as follows:

> [T]he [c]ourt finds that **both parties are 60 years old**. Patricia was **employed before the marriage**, then was a **stay-at-home wife/mother during the marriage**. Patricia testified she **now makes about the same income now from babysitting as she did from being a waitress at the time of the marriage**. . . . [A]ll marital property is encumbered with substantial marital debt, for which Gary shall remain responsible. Gary's Chapter 13 Bankruptcy is set to continue for another 24 months, and his monthly payment is

approximately $4,247.00. That Plan payment leaves Gary with **no surplus or disposable income.**

Patricia will retain real and personal property valued at approximately $363,000.00, **upon which there is no debt**. Patricia has not disclosed any fixed debt and her living expenses do not include any housing or automobile debt, as she inherited two houses and Gary is paying her [vehicle]. . . . [The] rehabilitative award will not be paid through Gary's Chapter 13 Plan. One major consideration for this arrangement is that Gary's Chapter 13 Plan will only continue for another 24 months. Another is that the [c]ourt likes to eliminate ongoing payments between parties whenever possible to reduce conflict.

(Emphasis added).

¶33. The chancellor signaled her intent with the award, stating that she was "going to grant [Patricia] some rehabilitative support to allow her to get back into the workforce." "[R]ehabilitative alimony is an equitable mechanism which **allows a party needing assistance to become self-supporting** without becoming destitute in the interim." *Culumber v. Culumber*, 261 So. 3d 1142, 1151-52 (¶30) (Miss. Ct. App. 2018) (emphasis added) (quoting *Serio v. Serio*, 203 So. 3d 24, 30 (¶17) (Miss. Ct. App. 2016)). It is "awarded to parties who have put their career on hold while taking care of the marital home" and "**allows the party to get back into the working world in order to become self-sufficient**." *Id.* (emphasis added). On the other hand, periodic alimony is "monthly alimony awarded on the basis of need." *West v. West*, 891 So. 2d 203, 212 (¶21) (Miss. 2004) (emphasis added) (citing *Cunningham v. Lanier*, 589 So. 2d 133, 136-37 (Miss. 1991)). The largest difference between periodic and rehabilitative alimony is that periodic alimony "is for an indefinite period vesting as it comes due" whereas rehabilitative alimony "is for a fixed period of time vesting as it accrues." *Brady v. Brady*, 14 So. 3d 823, 826 (¶15) (Miss. Ct. App. 2009)

19

(quoting *Lauro v. Lauro*, 847 So. 2d 843, 849 (¶15) (Miss. 2003)). Rehabilitative alimony fully accomplished the chancellor's goal, and again, "[t]he award of alimony is within the **sound discretion** of the chancellor." *White*, 913 So. 2d at 325 (citing *McEachern*, 605 So. 2d at 814).

¶34.    Moreover, "[i]n the case of a claimed inadequacy or outright denial of alimony, **we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion**." *Polk v. Polk*, 627 So. 2d 813, 814 (Miss. 1993) (emphasis added) (citing *Armstrong*, 618 So. 2d at 1280; *Smith v. Smith*, 607 So. 2d 122, 126 (Miss. 1992)). In the end, Patricia was left with her two separate properties totaling $270,000.00 and her inherited IRA account totaling approximately $72,000.00, neither of which was encumbered by debt, and one vehicle worth $20,650.00. Gary was left with "real and personal property valued at approximately $364,057.00, upon which there was at least $358,102.00 in fixed debt[.]" Both parties received one-half of the debt in taxes owed to the government. As noted previously, *see supra* ¶11, Patricia indicated to the chancellor that while she was interested in obtaining some of the marital property, she was not interested in obtaining their associated debts. This result is simply not "so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." *Id.* Alimony is left to the discretion of the chancellor. *Armstrong*, 618 So. 2d at 1280 (citing *McEachern*, 605 So. 2d at 814; *Cherry v. Cherry*, 593 So. 2d 13, 19 (Miss. 1991)). It follows here that this Court cannot declare that the chancellor's decision to grant rehabilitative alimony was manifestly erroneous or an abuse of discretion.

**CONCLUSION**

¶35.    This Court finds no abuse of discretion in the chancellor's decision to grant Gary a divorce on the ground of desertion and enter the contemplated alimony award.  We decline to address Patricia's argument concerning the calculation employed for property distribution because it is procedurally barred.  Accordingly, this Court affirms.

¶36.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**